781 P.2d 616

**STATE of Arizona, Appellee,**

v.

**Sam STEIGER, Appellant.**

**No. 1 CA–CR 88–657.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 21, 1989.

Reconsideration Denied Oct. 26, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel and Asst. Atty. Gen., Crane McClennen, Asst. Chief Counsel and Asst. Atty. Gen., Crim. Div., Phoenix, for appellee.

Tom Karas, Phoenix, for appellant.

## OPINION

CLABORNE, Presiding Judge.

This appeal involves the criminal prosecution and conviction of Sam Steiger, a member of the staff of the former Governor of the State of Arizona, Evan Mecham. Steiger was charged with a criminal violation of A.R.S. § 13–1804, which is entitled "Theft by Extortion." The information specifically charged Steiger with violating A.R.S. § 13–1804(A)(8), which provides:

(A) A person commits theft by extortion by knowingly ... seeking to obtain property or services by means of a threat to do in the future any one of the following:

.        .        .        .        .

(8) Perform or cause to be performed any other act which would not in itself materially benefit the defendant but which is calculated to harm another person with respect to his wealth, safety, business calling, financial condition, reputation or personal relationships.

This prosecution is based upon the following facts. Ron Johnson, a member of the Arizona Board of Pardons and Paroles, was appointed to the board by Governor Bruce Babbitt in 1984 and reappointed by Governor Evan Mecham in January, 1987. In August of 1987, Johnson was appointed

Justice of the Peace Pro Tem by B. Michael Dann, Presiding Judge, Maricopa County Superior Court. Johnson had inquired of the governor's office before his appointment to determine if there was serious objection to his holding both positions. There was not. The authority to appoint and remove a member of the board is solely the governor's. A.R.S. § 31–401 (1986).

The executive director of the board was Ms. Patricia Costello (Costello). She had been recommended by Steiger to fill that position in 1987, the year she was hired. Ms. Costello's employment was contingent upon the majority approval of the board. Her duties generally encompassed the supervision of the day-to-day administration of board activities.

The board was to meet on October 1, 1987. One of the agenda items was the continued employment of Costello as executive director. On the morning of the meeting, Steiger phoned Johnson. According to Johnson, Steiger said:

I want to make myself perfectly clear. If you vote to remove Patricia Costello as Executive Director to the Board at this afternoon's meeting I will see to it that you no longer serve as Justice of the Peace, and I will further take every step necessary to have you removed from the Board. Did I make myself clear?

It is upon this alleged statement that the prosecution of Steiger was based.

Before the board meeting, Johnson reported his version of the conversation to the Arizona Attorney General, Robert Corbin. At the board meeting and before the vote on Costello, Steiger appeared and voiced his concern on the stability and performance of the board and its relationship with the Department of Corrections. The vote was 4 to 3 to ask Costello to resign. Johnson voted in favor of asking for her resignation. Ms. Costello tendered her resignation immediately after the vote.

On October 2, 1987, Johnson received a letter from Steiger. The contents of the letter were:

Dear Mr. Johnson:

The permission granted you to act as Justice of the Peace pro-tem is withdrawn effective immediately.

Failure to comply with this order will result in this office rescinding your administrative probation and demanding your resignation.

Sincerely,
/s/Sam Steiger
Sam Steiger
Special Assistant

Johnson went back to the attorney general's office and, at the direction of that office, called Steiger at his home and tape-recorded that conversation without the knowledge of Steiger.

On October 5, 1987, George Graham, an investigator for the attorney general's office, at the direction of a deputy attorney general, went to Steiger's office and tape-recorded an interview without Steiger's knowledge. The state at oral argument conceded that one of its purposes in obtaining the recordings by Johnson and Graham was to gather impeaching evidence against Steiger.

Before trial, Steiger filed a motion to dismiss the information, a motion to suppress the Johnson and Graham recordings, and a motion in limine to limit the introduction of evidence at trial. Steiger also vigorously opposed the state's motion in limine to exclude certain evidence, contending that the granting of such a motion severely limited the defendant's right to test the credibility of the state's evidence, and severely limited the defendant's right to fully present his case.

At trial, the state offered both the Johnson and Graham recordings in evidence over Steiger's objection. The court admitted both recordings. Steiger had moved to suppress these recordings, but that motion was denied.

The essence of Steiger's defense was that any statement he made to Johnson was not for pecuniary or monetary gain but merely to advance the efficiency of the board and to repair the relationship between the board, the Department of Corrections and the public. The state's position is that Steiger extorted a vote from

Johnson in violation of A.R.S. § 13–1804(A)(8).

On April 7, 1988, the jury returned a verdict of guilty. The court denied Steiger's motion for new trial, which urged that the court erred in various instructions given and refused; in the admission and exclusion of certain evidence; and in failing to dismiss the prosecution. The court placed Steiger on probation for four years and ordered him to pay a fine in the amount of $5,480.00 and perform 700 hours in a community work service program.

Steiger raises the following issues on appeal:

1. The court's granting of the state's motion in limine denied Steiger due process and a fair trial.

2. Steiger was denied due process when the court precluded him from calling witnesses, introducing exhibits and testifying fully in his defense.

3. Steiger was denied the right to cross-examine Johnson on matters elicited by the state on direct examination.

4. The court erred in denying Steiger's motion to dismiss the information.

5. The court erred in its instructions to the jury.

6. The court erred in denying Steiger's motion to suppress conversations recorded by the state.

Steiger argues that the information should have been dismissed on constitutional grounds. He alleges that the portion of the statute under which he was prosecuted was unconstitutionally vague and susceptible not only of uncertain construction but also arbitrary application. Steiger claims that the statute is not only unconstitutionally vague with respect to him, but also that it is so vague that it abridges constitutionally protected rights of speech and expression of others. We decide today that A.R.S. § 13–1804(A)(8) is unconstitutionally vague and that this statute provides a real, credible and substantial threat of arbitrary and discriminatory enforcement.

As a result of questions by the court and counsel's answers, we requested additional briefing on the issue of whether the failure to obtain a warrant from a neutral magistrate before surreptitiously tape-recording a conversation violates Arizona's constitutional guarantee of privacy. Although we feel this issue is serious, we do not reach it, or the other issues raised on appeal, because we base our decision on the constitutionality of A.R.S. § 13–1804(A)(8). *See State v. Yslas,* 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984).

## A.R.S. § 13–1804(A)(8) is Unconstitutionally Vague.

Basic to our constitutional society is the concept that governmental power should be properly restrained so that individual freedom can be responsibly exercised. *See Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). As a result, penal statutes must be precise enough to clearly define the limits of that power. Our supreme court has said:

> That the terms of a penal statute ... must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*State v. McNair,* 141 Ariz. 475, 483, 687 P.2d 1230, 1238 (1984) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)).

Therefore, a penal statute is vague if it fails to give persons of average intelligence reasonable notice of what behavior is prohibited or is drafted in such a manner that it permits arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983); *State v. Tocco,* 156 Ariz. 116, 750 P.2d 874 (1988). Although due process requires notice which provides a fair and definite warning, it neither re-

quires absolute precision nor impossible standards. *Fuenning v. Superior Court,* 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983). *See also United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

Turning now to Steiger's vagueness attack on A.R.S. § 13–1804(A)(8), he first argues that the statute is vague because it does not clearly indicate a "vote" is encompassed within the terms "property or services" as used in A.R.S. § 13–1804(A). He contends the statute fails to give notice that it prohibits a "strictly political decision involving an intangible vote...."

Arizona has adopted broad definitions of property and services. Property is defined in A.R.S. § 13–105(29) as:

[A]nything of value, tangible or intangible. Services is defined in A.R.S. § 13–1801(13) as:

[L]abor, professional services, transportation, cable television, telephone, gas or electricity service, accommodation in hotels, restaurants, leased premises or elsewhere, admission to exhibitions and use of vehicles or other movable property.

■ The vote of Johnson was no less "valuable" than the right to be free from outside pressure in making a business decision. *See United States v. Santoni,* 585 F.2d 667 (4th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 459 (1979). *See also United States v. Schwartz,* 785 F.2d 673 (9th Cir.1986), *cert. denied,* 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986), *rev'd on other grounds,* 857 F.2d 655 (9th Cir.1988). Because a vote is an intangible and something of value, it is included within the definition of property in A.R.S. § 13–1804(A)(8).

Steiger's second claim is that A.R.S. § 13–1804(A)(8) presents a danger of arbitrary and discriminatory enforcement because it lacks specific guidelines concerning how it should be applied. He contends that under the statute prosecutions may be brought against persons who are viewed as political opponents and antagonists. We agree.

Returning to the basic premise that penal statutes defining a criminal offense must not only be definite, but also not encourage arbitrary and discriminatory enforcement, Justice O'Connor, writing for the majority in *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), said:

Although the doctrine [void for vagueness] focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the 'vagueness doctrine' is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. (citation omitted.) Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'

*Id.* at 358, 103 S.Ct. at 1858. And when a criminal statute's literal scope is capable of reaching first amendment expression, the vagueness doctrine demands a greater degree of specificity. *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 612 (1974).

Steiger's fear that criminal prosecutions may be brought against political opponents and antagonists is certainly realistic. Section 13–1804(A)(8) fails to specify any ascertainable standards for defining what types of threats fall within its prohibition.

To demonstrate the danger of this statute, consider the following three situations:

1) An executive assistant to the governor says to a parole board member, "Either you vote favorably on the parole application of a friend of mine who will come before you next week, or, in my official capacity, I will take steps to jeopardize your continued tenure in your position."

2) An executive assistant to the governor says to a parole board member, "Either you vote to approve the continued tenure of the current executive director, who has my confidence, or, in my official capacity, I will take steps to jeopardize your continued tenure in your position."

3) An executive assistant to the governor says to a political appointee of the governor's office, "Either you vote in accordance with the policy of the governor's office on this issue or, in my official capacity, I will recommend that you be removed from your position."

Each of the examples is prohibited by A.R.S. § 13–1804(A)(8). Example 1 can clearly be prosecuted under A.R.S. § 13–1804(A)(8). Example 3 demonstrates what many political executive aspirants promise to the electorate when they vow to get agency bureaucrats "moving again." Finally, example 2 resembles this case. Yet A.R.S. § 13–1804(A)(8) treats each vote (an extortable "property") and each executive communication as the same. It not only offers prosecutors, judges and juries no standard by which to distinguish such highly disparate communications, it also offers no standard to an executive assistant to distinguish the permissible from the impermissible.

The vagueness of § 13–1804(A)(8), however, is not limited to the political arena but also extends to individuals making private demands coupled with private threats. *See State v. Robertson*, 54 Or.App. 630, 635–36, 635 P.2d 1057, 1062–63 (1981) (Warden, J., dissenting), *rev'd*, 293 Or. 402, 649 P.2d 569 (1982) (a newspaper reporter tells a public official if the official votes a certain way, the reporter will divulge that the public official will gain from the public body's action). "The right of free expression is as important to many people in their personal and institutional relationships as it is in the narrower 'civil liberties' related to politics." *State v. Robertson*, 293 Or. at 412, 649 P.2d at 589.

■ A.R.S. § 13–1804(A)(8) is unconstitutionally vague both because it provides insufficient guidance to those who must make demands on others, and because it permits arbitrary and discriminatory enforcement. Not only does ambiguity exist as to the manner in which Steiger should proceed, but also this type of statute has a chilling effect on expression by others in the political world. Therefore, § 13–1804(A)(8) significantly jeopardizes

first amendment expression for those not before the court.

Certainly we do not condone in any way Steiger's conduct. Whether Steiger's objective was to preserve the effectiveness of the board or for far darker reasons is not the issue. The issue is much larger. There are times when an executive assistant to a governor, like Steiger, is required to issue strong directives in order to carry out the policy of the executive. To accomplish this end, the assistant may accompany the directive with a suggestion to certain employees that if the directive is not carried out the person may be demoted or even lose his job. As to other types of employees, persons like Steiger may not have the power to issue a directive, but must rely on their "persuasive ability"— "cajoling" as some say—to accomplish the desired result. Finally, in other situations a person in Steiger's position would have no power to say or do anything. This statute is so vague that it gives no direction to a person like Steiger as to what is a legitimate directive and what is not. At best the statute's "guidance" is ambiguous and, being so, subjects the individual to possible arbitrary prosecution. The legislature must narrowly draw a statute if it wishes to prohibit political intimidation.

*The Requirement That a Person Must Have "Standing" to Challenge a Statute as Unconstitutional.*

■ Our conclusions concerning the vagueness and the potential chilling impact of A.R.S. § 13–1804(A)(8) shape our determination that Steiger has standing to challenge the constitutionality of the statute. When approaching constitutional adjudication, the traditional view is that the challenge must be made by a litigant injured by the allegedly unconstitutional statute. *New York v. Ferber*, 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113, 1129 (1982); *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960); *State v. Delk*, 153 Ariz. 70, 71, 734 P.2d 612, 613 (App.1986). Put another way, constitutional rights are personal and may not be asserted "vicariously." There-

fore, the litigant challenging a statute may not challenge its constitutionality on the grounds that it may conceivably be unconstitutional when applied to others. *Ferber,* 458 U.S. at 767, 102 Ct. at 3360 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 838–39 (1973)). As we have said, Steiger received only ambiguous guidance from the statute as to legitimate or illegitimate policy directives to other government employees. Our supreme court has recognized that a defendant has standing "whose conduct is within the ambiguous area." *State v. Tocco,* 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988). Thus, Steiger derives standing first from his presence in the ambiguous area of A.R.S. § 13–1804(A)(8).

■ Second, even if Steiger lacks this basis for standing, he achieves standing on the ground that the statute intrudes upon first amendment rights.[1]

An exception to the traditional standing rule is recognized when a litigant challenges the constitutionality of a statute on the grounds that it intrudes upon activity protected by the first amendment. The litigant may challenge its constitutionality even though his conduct or expression is not constitutionally protected and clearly falls within the statute's legitimate scope. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 60, 96 S.Ct. 2440, 2447, 49 L.Ed.2d 310, 319–20 (1976). This exception is based on the belief that "the very existence of some statutes may cause persons not before the court to refrain from engaging in constitutionally protected speech or expression." *Id.* at 61, 96 S.Ct. at 2448. However, for the exception to apply, the deterrent effect on legitimate expression must be both "real and substantial," and

the statute must not be "readily subject to a narrowing construction." *Id.* There must be a realistic danger that the statute will *significantly* jeopardize recognized first amendment protections of individuals not before the court. *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 784 (1984).

Our concern, like Justice O'Connor's, in *Kolender,* "is based upon the potential for arbitrarily suppressing First Amendment liberties. . . ." *Kolender,* 461 U.S. at 358, 103 S.Ct. at 1859. A.R.S. § 13–1804(A)(8) attempts to regulate certain forms of expression. The statute prohibits the use of speech or expression to seek to obtain something of value by means of a threat requiring the performance of an act which *would not benefit the defendant* but which would be calculated to materially harm another with respect to his wealth, safety, business calling, career, financial condition, reputation or personal relationships.[2] Clearly, the making of a threat involves expression.

Therefore, we ask if this deterrent effect on legitimate expression is both "real and substantial."

In *Wurtz v. Risley,* 719 F.2d 1438 (9th Cir.1983), the Ninth Circuit Court of Appeals was presented with a constitutional challenge to Montana's intimidation statute on the grounds that it was substantially overbroad. The case is particularly instructive, not only because it helps us to determine the deterrent effect of A.R.S. § 13–1804(A)(8) on legitimate expression, but also because it discusses the view that even a litigant whose conduct is clearly prohibited may nevertheless challenge the

---

1. The First Amendment to the Constitution of the United States provides:
    Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
  U.S. Const. amend. I.
  Article 2, section 6 of the Constitution of the State of Arizona provides:

Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.
Ariz. Const. art. 2, § 6.

2. A.R.S. § 13–1804(A)(8) requires no "self seeking" objective which some courts feel is a necessary predicate in order to keep an extortion statute from inhibiting constitutionally protected expression. *State v. Robertson,* 293 Or. 402, 649 P.2d 569 (1982).

statute's constitutionality based upon rights of parties not before the court.

The court expressed the view that the state could unquestionably prohibit and punish the particular behavior of the defendant. *Id.* at 1442. But, when all of the characteristics of the statute were considered, the court felt it brought within its reach relatively harmless behavior. *Id.* As an example of harmless behavior which could be punished under the statute, the court referred to the civil rights activist who tells a restaurant owner, "if you don't desegregate this restaurant I am going to organize a boycott." *Id.* Punishing this type of behavior, said the *Wurtz* court, is to "chill the kind of 'uninhibited, robust and wide open' debate on public issues that lies at the core of the first amendment." *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686, 701 (1964)).

There are numerous instances in which A.R.S. § 13–1804(A)(8) may reach harmless behavior. We have indicated examples in the first section of this opinion. Accordingly, even if Steiger's behavior were clearly and unambiguously prohibited by statute, Steiger has "standing" to assert its unconstitutionality because of its potential for arbitrary application and its deterrent effect on legitimate expression by others.[3]

Finally, before we declare A.R.S. § 13–1804(A)(8) unconstitutional, we must consider whether a limiting construction could be placed on the statute to cure the constitutional infirmity. *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981); *State v. Lycett*, 133 Ariz. 185, 190, 650 P.2d 487, 492 (App.1982). There is a strong presumption in favor of a statute's constitutionality, *State v. Ramos*, 133 Ariz. 4, 648 P.2d 119 (1982), and we should give a challenged statute a constitutional construction whenever possible. *Eastin v. Broomfield*, 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977); *Mardian Constr. Co. v. Superior Court*, 113 Ariz. 489, 493, 557 P.2d 526, 530 (1976).

In *State v. Felton*, 339 So.2d 797 (La. 1976), the Louisiana Supreme Court applied such a construction to its extortion statute in order to save it from a constitutional challenge. The court limited the statute's application by recognizing that the general scope of extortion "is intended to include what is commonly known as 'blackmail'." *Id.* at 800. The court cited Lafave & Scott, *Criminal Law* § 66 (1972) as follows:

> [T]he purport of the statute is to prohibit the use of threats to cause the victim to part with his property or to do an act, or refrain from doing an act, to the advantage of the threatener, who could not without the threat otherwise lawfully secure such advantage willingly from the victim.

*Felton*, 339 So.2d at 800.

While it is proper for a court to construe a statute in such a manner, the court may not read into it something that the legisla-

---

3. We note that some disagreement exists among members of the Supreme Court as to whether a litigant who challenges a statute on vagueness grounds has standing to assert his claim based upon the rights of others. *Compare Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) with *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (White, J., concurring). It seems that when "standing" is analyzed concerning penal statutes which involve speech, the amorphous terms "vagueness" and "overbreadth" are logically related and sometimes functionally indistinguishable. *Kolender v. Lawson*, 461 U.S. at 358 n. 8, 103 S.Ct. at 1859 n. 8. A reading of the Supreme Court decisions reveals that when dealing with first amendment statutes, the terms are used interchangeably. *Id.; NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The objectionable quality of vagueness and over-

breadth does not depend upon absence of fair notice to a criminally accused or upon unchannelled delegation of legislative powers but upon the danger of tolerating, in the area of first amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. *Button*, 371 U.S. at 432–33, 83 S.Ct. at 845–46; *Barenblatt v. U.S.*, 360 U.S. 109, 137–38, 79 S.Ct. 1081, 1098–99, 3 L.Ed.2d 1115, 1135 (1959) (Black, J. dissenting). Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L. Rev. 844, 871–72 (1970). So, whether a penal statute is challenged on the grounds that it is "vague" or "overbroad," one may attack the statute for the "chilling" effect it will have on those who, although not the litigant, may be affected by its language when the challenge involves first amendment expression. *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

ture has not put there. *Collins v. Stockwell,* 137 Ariz. 416, 420, 671 P.2d 394, 398 (1983). This is particularly true in criminal law where the legislature, within constitutional limits, is empowered to determine what acts constitute a crime. *State v. Frey,* 141 Ariz. 321, 324, 686 P.2d 1291, 1294 (App.1984).

In *Home Box Office, Inc. v. Wilkinson,* 531 F.Supp. 987 (D.Utah 1982), the federal District Court for the District of Utah declined to place words of limitation on Utah's pornography statute in order to save it from a constitutional attack. The court felt that to introduce words of limitation "would to some extent, substitute the judicial for the legislative department.... To limit this statute ... would be to make new law, not to enforce an old one. This is no part of our duty." *Id.* at 998. *See United States v. Reese,* 2 Otto 214, 92 U.S. 214, 221, 23 L.Ed. 563 (1875) and L. Tribe, *American Constitutional Law* 717 at n. 4 (1978).

■ We agree with the approach taken in *Wilkinson.* A.R.S. § 13–1804(A)(8) was vaguely drafted by the legislature to cover a wide and potentially chilling range of activity. Undoubtedly, had the legislature intended to circumscribe its coverage, it could have easily installed words to that effect. For the court to now limit the statute's reach by introducing words of limitation would be to encroach upon the legislature's sole power to determine what acts constitute crimes. *See Frey,* 141 Ariz. at 324, 686 P.2d at 689.

Therefore, we leave to the legislature the task of narrowing A.R.S. § 13–1804(A)(8) with such specificity that it will cover conduct which is within the legislature's power to prohibit. We do not decide the constitutionality of any other provision of A.R.S. § 13–1804(A).

GRANT, C.J., and FIDEL, J., concur.