812 P.2d 987

STATE of Arizona, Appellee,

v.

Teresa Nina WESTERN, Appellant.

No. CR–90–0228–PR.

Supreme Court of Arizona,
En Banc.

May 30, 1991.

**170**

Richard W. Garnett, III, Scottsdale City Atty. by Frank E. Daniels, Scottsdale City Prosecutor, Scottsdale, for appellee.

Neal W. Bassett, Phoenix, for appellant.

## OPINION

FELDMAN, Vice Chief Justice.

Teresa Nina Western (defendant) was arrested while dancing partially clothed in a Scottsdale night club. She was convicted of violating Scottsdale Revised Code (S.R.C.) § 16–242 (1987).[1] Her appeal to the Maricopa County Superior Court was denied. *State v. Western*, Maricopa County Superior Court case No. LCA 88–00574. The court of appeals affirmed. *State v. Western*, No. 1 CA–CR 89–048 (Ariz.Ct. App. June 12, 1990) (memorandum decision). Defendant then petitioned this court for review, claiming that her conviction violated the first amendment to the United States Constitution. We granted review. *See* Rule 31.19, Ariz.R.Crim.P., 17 A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. 12–120.24.

1. Codified at S.R.C. § 8–307 at the time of de-

## DISCUSSION

Defendant challenges the constitutionality of the Scottsdale ordinance on two grounds. First, defendant argues that the ordinance is void for vagueness because its prohibitions are not defined in a manner that would enable a person of ordinary intelligence to determine just what is prohibited. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Second, she argues that the ordinance is overbroad because it criminalizes expression protected by the first amendment. *Id.* at 114, 92 S.Ct. at 2302. In considering these challenges, we have looked to the ordinance as a whole but address only the questions raised and argued.

### A. The Ordinance

■ The provision defendant allegedly violated reads as follows:

> Striptease performers shall not pass their hands over their bodies or the body of any other person ... in such a manner that the hands touch the body at any point, or engage in any motions simulating a sex act. Bumps and grinds shall not be made adjacent to a curtain or any other object, thing or person, nor from a reclining or horizontal position.

S.R.C. § 16–242.

The record supports the finding that, while dancing, defendant touched her body and made other forbidden movements. The facts clearly support the conclusion, therefore, that defendant violated § 16–242, if the ordinance applied to her at all. But § 16–242 does not criminalize such movements unless the person making them is a "striptease" performer dancing in a "cabaret." § 16–236 (formerly § 8–301). To define these terms, we must consult other sections of the ordinance to see if § 16–242 applies to defendant.

Section 16–237 provides that the ordinance as a whole applies only to cabarets. Section 16–236 defines cabaret as

> any restaurant, nightclub, bar, tavern, taproom, theatre, or private, fraternal,

fendant's arrest.

social, golf or country club, *which serves food or spirituous liquors....* (Emphasis added.) The establishment at which defendant was employed certainly qualifies as a cabaret, and the ordinance therefore applies to defendant if she is a striptease performer. Striptease is defined as

> a performance, exhibition, dance or appearance in which a person *appears in various degrees of undress,* or removes from or places upon his or her body clothing or covering, *and ... employs body motions,* including but not limited to torso gyrations, bumps and grinds, or gesticulations *while exhibiting his or her body in various degrees of undress.*

S.R.C. § 16–236 (emphasis added).

Defendant contends that this definition of striptease is so vague and overbroad that her conviction of violating § 16–242 by passing her hands over her body, touching her body, or making prohibited movements offends the constitution.

## B. Vagueness

The due process clause of the fourteenth amendment does not permit the state to deprive a person of liberty for violating a statute whose terms are "so vague, indefinite and uncertain" that their meaning cannot be reasonably ascertained. L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 10–8, at 684 (2d ed. 1988) (quoting *Lanzetta v. New Jersey,* 306 U.S. 451, 458, 59 S.Ct. 618, 621, 83 L.Ed. 888 (1939) (reversing defendant's conviction for violating a statute that made it a crime to be a "gangster")); *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298. The United States Supreme Court listed the evils of vague laws in *Grayned:*

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is

to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."

408 U.S. at 108–09, 92 S.Ct. at 2298–99 (footnotes omitted).

We apply these principles to the ordinance in question. Assuming *arguendo* that § 16–242 itself is not vague, defendant could be convicted of violating it only if she was a striptease performer. According to § 16–236, this is a person who "appears in various degrees of undress" and then "employs body motions, including" certain enumerated types. Combining the definitional sections of § 16–236 that are incorporated into the prohibitory section, § 16–242, we find the ordinance unconstitutionally vague with respect to both the attire and movements it prohibits.

Assume this defendant intended to include in her dance the body motions prohibited by § 16–242, but wished to avoid violating the ordinance by wearing proper attire that would not make her become a striptease performer. How would she determine what she might wear? The term "various degrees of undress" has no precise or ascertainable meaning of which this court is aware. We have been cited to no legal precedent that would help us define the term, the ordinance does not define the term, and so far as we know it has no customary or ordinary meaning, especially given modern costuming and dress. Undoubtedly, a nude dancer would be in a various degree of undress, but we are unable to say that a partially nude dancer necessarily would qualify. In short, there is no standard for determining what vari-

ous degree forms the dividing line. The phrase simply fails to give the fair warning required by *Grayned*.

The obverse is also true. Assume a performer intended to appear totally nude.[2] Realizing that this might well constitute a various degree of undress, a performer wishing to steer clear of the ordinance would want to make sure his or her movements would not constitute striptease. How would the performer know what could or could not be done? The ordinance indicates that the performer could not "employ body motions, including but not limited to torso gyrations, bumps and grinds, or gesticulations." Surely an ordinance regulating dancing must contemplate that the performer do more than stand stock still on stage. Obviously, therefore, some body motions make one a striptease performer but others do not. However, the ordinance supplies no standard for differentiation. Again, *Grayned*'s requirement of fair warning is violated. 408 U.S. at 108, 92 S.Ct. at 2298–99.

The problem of jury instructions illustrates the vice of the ordinance. If a person charged with violating this statute were to be tried by a jury, the judge would have to instruct the jury that the criminal provisions of § 16–242 could be applied only if the jury found that the defendant was a striptease performer. The judge would have to tell the jury that a person could be found a striptease performer only if he or she met the two-fold test of the statute by appearing in various degrees of undress and then performing the prohibited movements. But how would the judge explain what qualified as a various degree of undress or which movements would support a finding that the defendant was a striptease performer?

These indefinite provisions of the ordinance emphasize another aspect of the *Grayned* test. The key provisions are so nebulous and uncertain of definition that they raise substantial "dangers of arbitrary and discriminatory application." 408

U.S. at 109, 92 S.Ct. at 2299. This defendant is easy game—a topless dancer in a bar. Would the police as easily enter the municipal auditorium (assuming, like many, it served either food or alcohol before performance or at intermission) and seize the soprano playing Salome, perhaps arresting the rest of the cast, the orchestra, and the producer as accomplices?

We are assured at oral argument that the police would not do anything of the kind because they use their good judgment and discretion in enforcing the ordinance. No doubt this is usually correct, but it is exactly what we are cautioned against in *Grayned*. *See also Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974) ("Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections ... [and] entrust[s] lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" (citation omitted)); *State v. Steiger*, 162 Ariz. 138, 142, 781 P.2d 616, 620 (Ct.App.1989).

Combining the definitional sections of the ordinance with the prohibitory sections, we conclude that the ordinance is so uncertain that it failed to give defendant fair warning of what was permitted and what was prohibited. It is also so vague and uncertain that it permits of arbitrary and discriminatory application and may inhibit first amendment rights.

### C. Overbreadth

■ Defendant claims that the ordinance is drawn so broadly that it criminalizes conduct protected by the first amendment to the United States Constitution. Defendant argues that because of its vagueness, the statute applies not just to nude dancing but also to clothed or partially clothed dancing that includes bumps, grinds, or gesticulations. It therefore subjects a veritable army of entertainers in a host of musicals, dance numbers, and operas to

---

**2.** We note that many recent productions as diverse as the musical "Hair," the play "Six Degrees of Separation," and the opera "Salome" present nude performers. Most modern theaters serve either food or alcoholic beverages before the performance or during intermission and therefore would qualify as cabarets under the ordinance.

prosecution as striptease performers for touching their bodies, touching the bodies of other dancers, or being adjacent to curtains or other performers, all while in various degrees of undress and employing body movements.

No doubt many dancers, including those in classical ballet, modern dance, and Broadway-type performances, appear in costumes that might constitute various degrees of undress. All dancers employ body movements. All such dancers would fall within § 16–242's definition of striptease performer and would be prohibited by that ordinance from touching either their own bodies or the bodies of other dancers. Defendant argues that such a restriction of theatrical or artistic performance violates the first amendment to the United States Constitution and that the ordinance is therefore void.

■ Central to defendant's argument is the premise that the first amendment's guarantee of freedom of speech applies to and protects dancing. Unquestionably, dance as an art form communicates ideas and emotions and is a form of expression protected by the first amendment. *See Schad v. Burrough of Mt. Ephraim*, 452 U.S. 61, 65–66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975).[3] While the twenty-first amendment[4] enables the state to regulate or even ban nude or partially nude dancing in businesses in which alcohol is served— *see New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 717, 101 S.Ct. 2599, 2601, 69 L.Ed.2d 357 (1981); *California v. LaRue*, 409 U.S. 109, 114–19, 93 S.Ct. 390, 395–97, 34 L.Ed.2d 342 (1972)—the explicit

terms of the ordinance before us apply to establishments, including theaters, that serve food *or* alcohol. *See* § 16–236.

■ We must therefore conclude that the ordinance criminalizes what the first amendment unquestionably protects—non-obscene dancing at locations that do not serve alcohol. Conceding that she was performing at an establishment that serves alcohol, defendant nevertheless contends that she has standing to mount a facial challenge to this ordinance, asserting in effect the rights of those who are not being prosecuted under it. The state has not argued to the contrary, and we believe the issue is settled by Justice Rehnquist's words in *Doran:*

> We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, [33 L.Ed.2d 222], ... (1972):
>
> "Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish [defendant's] standing to raise an overbreadth challenge."

*Doran*, 422 U.S. at 933, 95 S.Ct. at 2568–69; *see also Steiger*, 162 Ariz. at 144–45, 781 P.2d at 622–23; L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–32, at 1035 (those deterred from privileged activity by an overbroad statute lack "by

---

**3.** In *Yauch v. State*, 109 Ariz. 576, 578, 514 P.2d 709, 711 (1973), decided before *Schad* and *Doran*, this court considered the argument that non-obscene dancing was protected by the first amendment. We

> reject[ed] such an argument when applied to restaurants, nightclubs, bars, cabarets, taverns, taprooms, and private, fraternal, social, golf or country clubs, and like public places. While the freedom of speech which the First Amendment guarantees includes all modes of communication of ideas by conduct, we do not accept the view that a limitless variety of conduct can be labeled expression.

The quoted statement from *Yauch* may well have been the genesis for the Scottsdale ordinance and was relied on by the court of appeals. *Western*, memo. decision at 6–7. *Yauch* cannot withstand the analysis required under *Schad* and *Doran*, and its restrictive interpretation of first amendment protection is disapproved.

**4.** "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. Amend. XXI, § 2.

definition the willingness to disobey the law" to assert their own rights).

## CONCLUSION

We find that defendant's vagueness and overbreadth challenges are well-taken. S.R.C. § 16–242, as its terms are defined in S.R.C. § 16–236, is both vague and overbroad. S.R.C. § 16–242 is therefore void under the first and fourteenth amendments to the United States Constitution.

· The memorandum decision of the court of appeals is vacated. The judgment of the superior court is reversed. The conviction in city court is reversed. The case is remanded with instructions to enter a judgment of not guilty.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.