954 P.2d 1053

**STATE of Arizona, Appellee,**

v.

**Geoffrey G. MUSSER, Appellant.**

**No. 1 CA–CR 95–0849.**

Court of Appeals of Arizona,
Division 1, Department A.

July 29, 1997.

Review Granted April 21, 1998.*

* Feldman, J., recused himself and did not partici- pate in the determination of this matter.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Linda L. Knowles, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Brian C. Bond, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

FIDEL, Judge.

Defendant Geoffrey G. Musser, convicted under a statute that prohibits use of a telephone to threaten or intimidate, challenges the constitutionality of the statute on appeal. Musser acknowledges that the statute encompasses some conduct that the State may constitutionally proscribe. He claims, however, that the statute also sweeps in constitutionally protected speech and is therefore unconstitutionally overbroad.

## BACKGROUND

In 1994, Musser telephoned the office of the Chief Justice of Arizona to complain about an adverse experience in the justice court. Dissatisfied with a law clerk's response, Musser ended the conversation by stating that he "might just have to show up on a judge's doorstep, and discuss the matter at gunpoint." Capitol police were notified and interviewed Musser, who admitted making the threatening telephone call.

Musser was prosecuted, tried, and convicted in justice court on one count of using a telephone to intimidate, a class 1 misdemeanor, and placed on six months' probation. The superior court affirmed.[1] On claims that originate in justice court and undergo superior court review, we limit our additional review to the validity of the statute underlying the conviction. Super. Ct.Crim.App. P.R. 13(b); *State v. Martin,* 174 Ariz. 118, 120–21, 847 P.2d 619, 621–22 (App.1992).

Musser was convicted under Arizona Revised Statutes Annotated ("A.R.S.") § 13–2916(A) (1989). He contends on appeal that § 13–2916 is unconstitutionally vague and

1. Musser's probation expired before the opening brief was filed in this court.

2. Our supreme court has given broader scope to article II, § 6 of the Arizona Constitution than to the First Amendment. *See Mountain States Tel.*

overbroad, proscribing expression protected by the First Amendment to the United States Constitution and article II, § 6 of the Arizona Constitution.[2]

The relevant portion of § 13–2916 provides:

A. It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to use a telephone and ... threaten to inflict injury or physical harm to the person or property of any person....

B. The ... making of a threat ... as set forth in this section shall be prima facie evidence of intent to terrify, intimidate, threaten, harass, annoy or offend.

## STANDING

Defendant does not claim that his telephonic conduct was constitutionally protected; he acknowledges that it might have been constitutionally prohibited and prosecuted under a narrowly drawn statute. He argues, however, that A.R.S. § 13–2916 is so broadly written as to deter or constrain the freedom of expression of persons not before the court.

Courts generally decline to confer standing on litigants who challenge a statute only "on the grounds that it may conceivably be unconstitutional when applied to others." *State v. Steiger,* 162 Ariz. 138, 143–44, 781 P.2d 616, 621–22 (App.1989); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973). To achieve standing for a constitutional challenge, one must ordinarily assert an unconstitutional application to oneself. But in cases that challenge statutes with significant potential to constrain the freedom of expression of others, courts have relaxed the stringent traditional standing rule:

Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the

*& Tel. Co. v. Arizona Corp. Comm'n,* 160 Ariz. 350, 354–55, 773 P.2d 455, 459–60 (1989). Musser, however, does not assert that textual differences between those provisions warrant differential analysis in this appeal.

statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2915; *State v. Western*, 168 Ariz. 169, 173, 812 P.2d 987, 991 (1991). Invoking this exception, Defendant asserts standing to challenge the validity of A.R.S. § 13–2916, "regardless of whether his statements on the telephone were legally sufficient to find him guilty under the statute, or clearly within [its] 'legitimate sweep.'"

 There is an element of discretion in the decision to relax standing requirements in cases asserting unconstitutional overbreadth. The more strained or unlikely the hypothetical invasion of another's rights, the less likely the conferral of standing. Only the colorable prospect of a "real and substantial" deterrence of legitimate expression will induce a court to employ the standing exception to examine the potential impact of a statute on the expressive rights of persons not before the court. *Steiger*, 162 Ariz. at 144, 781 P.2d at 622.[3]

In the next section of this opinion, we describe a series of otherwise lawful threats that fall within the scope of A.R.S. § 13–2916—threats, common in everyday discourse, to take some lawful action that will be harmful to the interests of the listener. Because the legitimacy of such discourse is rendered uncertain by § 13–2916, we find the prospect of deterrence of protected speech sufficiently colorable to confer standing and proceed.

## OVERBREADTH

A statute is overbroad that targets constitutionally unprotected conduct but sweeps in constitutionally protected speech. *State v.*

*Weinstein*, 182 Ariz. 564, 565–66, 898 P.2d 513, 514–15 (App.1995). Because the line between "pure speech" and expressive conduct is blurred, a criminal law intended to control unprotected conduct, "if too broadly worded, may deter protected speech to some unknown extent." *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917. *Broadrick* cautions, however, that "there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.*

This court has twice held that the predecessor to § 13–2916(A)—then § 13–895(A)—was intended to control constitutionally unprotected conduct, not protected speech. *See Baker v. State*, 16 Ariz.App. 463, 494 P.2d 68 (1972); *State v. Hagen*, 27 Ariz.App. 722, 558 P.2d 750 (1976).[4] In *Baker*, an obscenity prosecution, we rejected a vagueness challenge to § 13–895(A), holding that the statute was "not directed at the communication of thoughts or ideas but at conduct, . . . the use of the telephone to terrify, intimidate, threaten, harass, annoy or offend people by use of the language proscribed." 16 Ariz.App. at 465, 494 P.2d at 70. In *Hagen*, also an obscenity prosecution, we rejected an overbreadth attack, finding that the legislature had sufficiently narrowed the statute to unprotected conduct "[b]y specifying the *intent* with which the call must be made [an intent to terrify, intimidate, threaten, harass, annoy or offend] and the nature of the language prohibited." 27 Ariz.App. at 725, 558 P.2d at 753 (emphasis in original).

---

**3.** Once a litigant has been accorded standing to assert an overbreadth challenge, the litigant, in order to succeed, must demonstrate that the statutory overbreadth is "not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2918. There is thus an element of redundancy in *Steiger* 's requirement that the litigant show the prospect of a "real and substantial" deterrence of legitimate expression in order to be accorded standing. The courts, however, should not launch into constitutional overbreadth analysis merely because a litigant "can conceive of some impermissible applications of a statute." *Members of City Council v.*

*Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984). Unless courts exercise discretion at the standing stage, the overbreadth doctrine "might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule." *Id.* at 799, 104 S.Ct. at 2126. Accordingly, we interpret *Steiger* to mean that, unless there is a colorable prospect of a "real and substantial" deterrence of protected expression, a court should reject standing and decline to reach the question of constitutionality.

**4.** The former A.R.S. § 13–895 was renumbered as A.R.S. § 13–2916 in 1978.

■ Defendant acknowledges these holdings, but distinguishes them on the basis of an intervening statutory change. When *Baker* and *Hagen* were decided, the operative statutory act was "to telephone another"; under the present statute, as amended in 1978, the operative statutory act is "to use a telephone." According to Defendant, when the legislature eliminated the requirement that the defendant *initiate* the call, it impermissibly shifted the focus of the statute from conduct toward speech. Defendant argues:

> "*Making*" a call with the intent proscribed by the statute at the time of "making" it may, in fact, lean more towards "conduct" than "speech"—the "conduct" being the initial "intrusion" for the ... purpose of intruding on the listener's privacy and peace of mind. The 1978 amendment vitiates this distinction.

The State responds, "The threatening conduct is equally harmful regardless of whether the defendant formed his intent before or after he dialed." But the State ignores the point that, under the current statute, the defendant need not have dialed at all. Thus, the State leaves unanswered Defendant's assertion that the 1978 amendment broadened and obscured the focus of a statute that was previously directed at the invasion of privacy that arises when the defendant initiates a threatening call.[5]

*Baker* and *Hagen* are distinguishable in another, and more significant, respect. In those cases, the defendants were charged with obscenity, and the court had no occasion to examine the breadth of the statutory proscription of threats, including threats against property. Defendant urges us to be guided instead by *Steiger*, 162 Ariz. 138, 781 P.2d 616, and *Wurtz v. Risley*, 719 F.2d 1438 (9th Cir.1983), which overturned prosecutions arising out of threats.

In *Wurtz*, the Ninth Circuit voided for overbreadth a Montana statute that read in relevant part:

> A person commits the offense of intimidation when, with the purpose to cause

another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts: ... commit any criminal offense.

*Id.* at 1439 n. 2 (quoting Montana Code Annotated § 45–5–203(1)(c) (1981)). Wurtz's conduct, like Defendant's, could have been "proscribed and punished under a narrowly drawn statute." *Id.* at 1440. The Montana statute was found overbroad, however, in two respects. First, it was not limited to threats that instill fear—those with "a reasonable tendency to produce in the victim a fear that the threat will be carried out." *Id.* at 1441. Second, it was broad enough to sweep in protected forms of expression such as threats of sit-ins, marches in the street, and mass picketing. *Id.* at 1442. As an example, the court observed that the statute would make it a crime for a "civil rights activist [to state] to a restaurant owner, 'if you don't desegregate this restaurant I am going to organize a boycott.'" *Id.*

In *Steiger*, citing *Wurtz* as "particularly instructive," this court held a portion of Arizona's threat-by-extortion statute unconstitutionally vague. 162 Ariz. at 144, 146, 781 P.2d at 622, 624. That portion made it a crime to "seek[ ] to obtain property or services by means of a threat to ... [p]erform or cause to be performed any other act ... calculated to harm another person with respect to his wealth, safety, business calling, financial condition, reputation or personal relationships." *Id.* at 139, 781 P.2d at 617 (quoting A.R.S. § 13–1804(A)(8)). To exemplify the sweep of the statute, we observed that it would permit prosecution of an executive assistant to the governor who told a political appointee:

> Either you vote in accordance with the policy of the governor's office on this issue or, in my official capacity, I will recommend that you be removed from your position.

---

5. Threats in general, including those made over the telephone, are proscribed under a separate criminal statute, A.R.S. § 13–1202 (Supp.1996), which makes it a crime to "threaten[ ] or intimidate[ ] by word or conduct ... to cause physical injury to another person or serious damage to the property of another." Yet the legislature singled out telephonic threats for separate treatment in § 13–2916. Like Defendant, we consider invasion of privacy the distinguishing gravamen of a telephonic threat.

*Id.* at 143, 781 P.2d at 621. Because the statute was so broad and indefinite as to permit arbitrary or discriminatory law enforcement, and because it had significant potential to chill constitutionally protected expression, we held the statute unconstitutionally vague.

In *Weinstein,* a still more recent case, this court held another portion of Arizona's threat-by-extortion statute unconstitutionally overbroad. 182 Ariz. 564, 898 P.2d 513. That portion made it a crime to "seek[ ] to obtain property or services by means of a threat to . . . [e]xpose a secret or an asserted fact, whether true or false, tending to subject anyone to hatred, contempt or ridicule or to impair his credit or business." *Id.* at 566, 898 P.2d at 515 (quoting ˙A.R.S. § 13–1804(A)(6)) (emphasis omitted). The statute, we concluded, swept so broadly as to reach a homeowner's threat to report a contractor to the Registrar of Contractors if the contractor declined to "fix shoddy work," a store owner's threat to report a customer to a credit reporting agency if the customer declined to pay a delinquent bill, an attorney's threat to sue for breach of contract on behalf of a client unless the recipient of the communication performed the contract according to its terms, and a mother's threat to report her former husband to the authorities for potential incarceration unless the former husband paid arrearages in child support. *Id.*

Such threats were described in *Weinstein* as "common in everyday business and personal interactions." *Id.* Each of them was a threat to take some *lawful* action adverse to the listener. Each of them would be encompassed under A.R.S. § 13–2916 if conveyed by telephone,[6] as would the hypothetical threats described in *Wurtz* and *Steiger. See Wurtz,* 719 F.2d at 1442 (the civil rights worker's threat to organize a desegregation boycott); *Steiger,* 162 Ariz. at 143, 781 P.2d at 621 (the governor's assistant's threat to seek removal of a political appointee who refused to follow executive policy).

■ The United States Supreme Court has recognized that the word "threat" may

cover constitutionally protected speech. *See Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). The examples above demonstrate that A.R.S. § 13–2916(A) sweeps in a broad array of constitutionally protected speech in the form of threats to the person or property of another. They also show that § 13–2916(A) is no less susceptible than the statutory provisions considered in *Steiger* and *Weinstein* to arbitrary law enforcement and to chilling or deterrence of free speech. It follows, unless we reject the guidance of *Steiger* and *Weinstein*—and we do not—that § 13–2916(A) is facially violative of the First Amendment to the U.S. Constitution and of article II, § 6 of the Arizona Constitution, unless by construction we may narrow it to apply only to unprotected conduct. *See Steiger,* 162 Ariz. at 144, 781 P.2d at 622 (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976)).

## NARROWING CONSTRUCTION

■ "Before declaring a statute unconstitutional, a court should consider whether a limiting construction would cure its constitutional infirmity." *State v. Baldwin,* 184 Ariz. 267, 270, 908 P.2d 483, 486 (App.1995) (quoting *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991)). However, "there are limits to our ability to rescue unconstitutional legislation." *Weinstein,* 182 Ariz. at 567, 898 P.2d at 516.

■ One means to narrow § 13–2916(A) would be to limit it to threats to commit *unlawful* acts that are harmful to the person or property of another. But the *Weinstein* court declined to read a similar limitation into the theft-by-extortion statute because such a limitation would not meaningfully define prohibited conduct for the public. *Id.* at 568, 898 P.2d at 517 (refusing to limit statute to "wrongful" threats). As that court tersely stated, "criminal statutes need to define rather than simply assert illegality." *Id.* at 567, 898 P.2d at 516.

---

6. Under A.R.S. § 13–2916, it suffices to establish *mens rea* for the State to prove "intent to . . . threaten." Further, A.R.S. § 13–2916 is not confined to threats to commit physical harm to another person. It extends more broadly to threats

"to inflict injury . . . to the person or property of another person." Section 13–105(32) (Supp. 1996) defines property broadly to include "anything of value, tangible or intangible."

The *Steiger* court similarly declined to ratchet subsection (A)(8) of the theft-by-extortion statute down to a constitutionally acceptable version because to do so would introduce words of limitation that the legislature had not accepted and encroach upon the legislative power to define what constitutes a crime. 162 Ariz. at 145–46, 781 P.2d at 623–24.

For another reason, we decline to attempt a narrowing construction in this case. In 1972, in *Baker*, this court held that A.R.S. § 13–895(B) established an unconstitutional presumption. 16 Ariz.App. at 466–67, 494 P.2d at 71–72. Twenty-five years later that subsection remains codified verbatim as § 13–2916(B). If we now undertook to rewrite subsection A by judicial construction, we would leave the statute on the books a doubly misleading guidepost to the true state of the law. A statute must provide a reasonable degree of guidance both to those who wish to confine their behavior to the law and those who must enforce the law. To meet that need, the legislature must rewrite § 13–2916 to redefine, subject to constitutional constraints, what telephonic conduct is proscribed.

## CONCLUSION

For the foregoing reasons, we find A.R.S. § 13–2916(A) unconstitutionally overbroad. We reverse Defendant's conviction and sentence and direct the entry of judgment of acquittal.

NOYES, P.J., and RYAN, J., concur.