972 P.2d 1021

**STATE of Arizona, Appellee,**

v.

**Elaine G. LEFEVRE, Appellant.**

**No. 1 CA–CR 97–0158.**

Court of Appeals of Arizona, Division 1, Department C.

July 21, 1998.

Reconsideration Denied Sept. 18, 1998.

Review Denied Feb. 23, 1999.

Grant Woods, Attorney General by Paul J.
McMurdie, Chief Counsel, Criminal Appeals

Section, Joseph T. Maziarz, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for Appellant.

### OPINION

GRANT, Judge.

¶ 1   Elaine G. Lefevre ("Defendant") appeals her conviction and sentence on one count of second-degree money laundering, a class 3 felony, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–2317. Her sole argument on appeal is that Arizona's money laundering statute is unconstitutionally vague because, by imposing criminal liability on those who merely have "reason to know" that they are dealing with the proceeds of an offense, the statute fails to give adequate notice of the specific type of conduct that it prohibits. For the reasons that follow, we reject this argument and affirm Defendant's conviction and sentence.

### FACTS AND PROCEDURAL HISTORY [1]

¶ 2   In 1988, separate owners of two parcels of land in Northwest Phoenix applied to the Phoenix City Council for rezoning to permit commercial use of their properties. Pursuant to the city's zoning procedure at the time, all zoning applications were subject to a three-tiered review. First, an urban village planning committee, appointed by the City Council and composed of volunteers who resided in the "urban village" in which the property was located, would review the application and make a recommendation to the Phoenix Planning Commission. The Phoenix Planning Commission, in turn, would review the application and make its own recommendation to the City Council, which would then make the final determination.

¶ 3   The properties at issue in this case are both located at the intersection of 43rd Avenue and Pinnacle Peak Road in Phoenix. A limited partnership known as the Dartmouth Group owned the parcel on the northeast corner. Ben Friedman ("Friedman")

and Tom Lynch served as general partners of the Dartmouth Group. The Shores at Rainbow Lake ("The Shores"), a corporation, owned the other parcel on the northwest corner. The Shores' owners, Tom Cavanagh and Don Liem, retained Paul Gilbert ("Gilbert"), a Phoenix zoning attorney, to represent them in the rezoning application process.

¶ 4   Because the parcels were located in the Deer Valley urban village, both the Dartmouth Group and The Shores submitted their rezoning applications to the Deer Valley Village Planning Committee ("DVVPC") for its initial review and recommendation. Defendant was a member of the DVVPC. An elementary school teacher and unsuccessful candidate for City Council, Defendant was also an active and vocal opponent of commercial development in the area.

¶ 5   In April 1988, Friedman met with Gilbert and his clients to discuss possible cooperation between the Dartmouth Group and The Shores in rezoning their respective properties. Because The Shores' initial efforts to rezone its property had "alienated" the residents of the surrounding area, Friedman agreed that the Dartmouth Group would work with the neighborhood, through Defendant, to attempt to reach an acceptable compromise on both rezoning applications.

¶ 6   At a meeting of the Phoenix Planning Commission on June 22, 1988, Friedman informed Gilbert that he had had a discussion with Defendant concerning her position on the rezoning applications. According to Friedman, Defendant told him that she would not oppose the rezoning application for either property if, in addition to other conditions, the Dartmouth Group and The Shores each contributed $50,000 to charities of her choosing. Friedman then gave Gilbert an envelope on which he had summarized his conversation with Defendant.

¶ 7   Defendant was also present at that Phoenix Planning Commission meeting. Immediately after talking to Friedman, Gilbert approached Defendant, told her that Fried-

---

1.   We view the facts underlying Defendant's conviction in the light most favorable to sustaining the jury's verdict. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

man had conveyed her offer, and asked her, "[I]s this correct?" Defendant responded, "Yes." Later that evening, Gilbert dictated a letter to his clients, informing them of Defendant's proposal and conveying his impression that Friedman was "willing to consider it."

¶ 8 The record suggests, however, that, by June 22, 1988, Friedman had done more than merely "consider" Defendant's proposal. On May 25, 1988, Defendant opened a deposit account at Valley National Bank under the name "Andon Enterprise," with all fees on the account to be paid from an account owned by the Dartmouth Group. Two days later, the bank deposited an $11,700 check, signed by Friedman and drawn on the Dartmouth Group's account, into the Andon account. Over the next ten months, Friedman wrote nine checks to the Andon account, each for $2000. Total deposits into the Andon account equaled $29,700.

¶ 9 Defendant, in turn, withdrew money from the Andon account for her personal use. For example, four days after the bank deposited the $11,700 check, Defendant withdrew $9702 in the form of a cashier's check, which she then deposited in a joint account she held with her husband at a local credit union. Defendant also made numerous ATM cash withdrawals from the Andon account.

¶ 10 One of the owners of The Shores, Tom Cavanagh, eventually informed the Maricopa County Attorney of Defendant's statements to Friedman. The County Attorney's Office began a criminal investigation in 1989, but did not indict Defendant until 1994. The indictment charged Defendant with three counts of bribery in violation of A.R.S. section 13–2602. The three bribery counts arose from Defendant's conversation with Friedman during which she suggested that Friedman, Tom Cavanagh and Don Liem contribute $50,000 to charities she supported. The indictment further charged Defendant with one count of second-degree money laundering in violation of A.R.S. section 13–2317(A). This count arose from Defendant's receipt of the money in the Andon account. The indictment also named Friedman as a

co-defendant, charging him with one count of bribery of Defendant, a public servant.

¶ 11 Defendant and Friedman were tried together. Although Defendant admitted that she made the alleged statement about the $50,000 contributions, she maintained that the statement was meant as a joke and that she never intended that it be taken seriously. Concerning the $29,700 deposited into the Andon account by Friedman, both Defendant and Friedman testified that the money represented an advance on a finder's fee paid to Defendant, who had agreed to assist Friedman in finding a buyer for a $23 million parcel of commercial property he owned near the Deer Valley Airport.

¶ 12 The jury acquitted Defendant of all bribery charges, but convicted her of money laundering. It also convicted Friedman of bribing Defendant. The trial court suspended Defendant's sentence and placed her on three years' probation. She timely appealed her conviction and sentence to this court. We have jurisdiction pursuant to Article VI, Section 9 of the Arizona Constitution and A.R.S. sections 12–120.21, 13–4031, and 13–4033(A).

## ISSUE

Is the Arizona money laundering statute unconstitutionally vague because the words "reason to know" fail to provide a fair warning of what conduct is prohibited and provide no standard for the adjudication of guilt?

## DISCUSSION

¶ 13 The version of the money laundering statute in effect at the time of Defendant's offense read:

A person who acquires or maintains an interest in, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or *having reason to know* that they are the proceeds of an offense is guilty of money laundering in the second degree.

A.R.S. § 13–2317(A) (1988) (emphasis added).[2] The statutory definition of racketeer-

---

**2.** The legislature amended the money laundering statute in 1991. *See* 1991 Ariz. Sess. Laws, Ch.

151, § 5. However, in addition to retaining the "reason to know" language of the prior version

ing includes bribery. *See* A.R.S. § 13–2301(D)(4)(f). Thus, the "racketeering proceeds" at issue in this case were Friedman's bribery payments to Defendant, and Defendant was convicted of receiving those proceeds "knowing or having reason to know" that Friedman intended the money as a bribe.

¶ 14 Defendant's sole argument on appeal is that her conviction is void because the money laundering statute is unconstitutionally vague. Specifically, she maintains that the phrase "having reason to know" fails to give any meaningful guidance concerning the *mens rea* necessary to commit the offense of money laundering. In fact, according to Defendant, the use of the phrase "having reason to know" in the statute transforms the offense from one requiring a *mens rea* of knowledge into one of strict liability. That is, as long as objective facts exist from which a person could deduce that she was receiving the proceeds of an offense, that person is guilty of money laundering under the statute, even if she had no actual suspicion that she was receiving "dirty" money.

¶ 15 As a threshold matter, we note that Defendant failed to raise her constitutional challenge before the trial court. Normally, failure to raise a claim at trial waives appellate review of that claim, even if the alleged error is of constitutional dimension. *See State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991); *State v. Tison,* 129 Ariz. 526, 535, 633 P.2d 335, 344 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). However, when, as here, a defendant claims that a statute is unconstitutionally vague, we may consider that claim for the first time on appeal. *State v. Ochoa,* 189 Ariz. 454, 459, 943 P.2d 814, 819 (App.1997), *cert. denied,* — U.S. —, 118 S.Ct. 868, 139 L.Ed.2d 765 (1998); *State v. Junkin,* 123 Ariz. 288, 290, 599 P.2d 244, 246 (App.1979), *cert. denied,* 444 U.S. 983, 100 S.Ct. 489, 62 L.Ed.2d 411 (1979).

¶ 16 Of course, we may address a constitutional challenge to a statute only if the party asserting it has standing to raise the claim. *See Church v. Rawson Drug & Sundry Co.,* 173 Ariz. 342, 349, 842 P.2d 1355, 1362 (App.1992). To possess standing to assert a constitutional challenge, Defendant must have suffered some threatened or actual injury from the alleged constitutional infirmity. *See State v. Herrera,* 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978), *cert. denied,* 441 U.S. 949, 99 S.Ct. 2175, 60 L.Ed.2d 1054 (1979). Thus, Defendant would have no standing to allege that the money laundering statute is impermissibly vague if her conduct clearly fell within the legitimate purview of the statute. *See Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *Ochoa,* 189 Ariz. at 460, 943 P.2d at 820 (same).

¶ 17 The State maintains that the statute clearly proscribes Defendant's conduct and that, therefore, she lacks standing to argue that the "reason to know" language is unconstitutionally vague. We assume from this argument that the State interprets Defendant's money laundering conviction to mean that the jury believed Defendant accepted the money from Friedman *knowing* that it was a bribe. The jury, however, acquitted Defendant of all three bribery counts, including the count involving Friedman. This means that the State did not convince the jury beyond a reasonable doubt that Defendant solicited, *accepted* or *agreed to accept* a bribe from Friedman. *See* A.R.S. § 13–2602(A)(2). Given these facts, it is plausible that the jury convicted Defendant of money laundering because it found that she had "reason to know" that Friedman gave her money intended as a bribe, not an advance on a finder's fee for the sale of Friedman's other property. Thus, her conduct arguably falls within the challenged portion of the statute; she has standing to challenge its constitutionality. We therefore address the merits of her claim.

¶ 18 In reviewing the constitutionality of a statute, we are guided by a strong presumption that the statutory provision is constitutional. *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 148, 800

---

of the statute, *see* A.R.S. § 13–2317(A)(1), the amended version added an additional subsection employing a "reason to know" *mens rea*. *See* A.R.S. § 13–2317(A)(3).

P.2d 1251, 1256 (1990). A statute is unconstitutionally vague if it fails to give persons of average intelligence reasonable notice of what behavior is prohibited, or if it is drafted in such a manner that permits arbitrary and discriminatory enforcement. *State v. Steiger*, 162 Ariz. 138, 141, 781 P.2d 616, 619 (App.1989). "However, due process does not require that a statute be drafted with absolute precision." *State v. Takacs*, 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991) (citing *Fuenning v. Superior Court*, 139 Ariz. 590, 680 P.2d 121 (1983)). A statute is not unconstitutionally vague solely because it fails to explicitly define one of its terms or because the provision is susceptible to more than one interpretation. *See id.* When a statute's language is unclear, we strive to give it a sensible construction and, if possible, uphold the provision. *See Maricopa County Juvenile Action No. JT9065297*, 181 Ariz. 69, 80, 887 P.2d 599, 610 (App.1994) (citing *State v. Wagstaff*, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990)).

¶ 19 Defendant argues that the money laundering statute is void for vagueness because it provides no guidance as to when a person may be deemed to have "reason to know" that she is dealing with the proceeds of an offense. However, even if it is true that the statute fails to limit those circumstances under which a person is presumed to have "reason to know" that questioned funds are racketeering proceeds, this fact does not render the statute unconstitutional. "A statute that 'gives fair notice of conduct to be avoided is not void for vagueness simply because it may be difficult to determine how far one can go before the statute is violated.'" *State v. Phillips*, 178 Ariz. 368, 370, 873 P.2d 706, 708 (App.1994) (quoting *Berenter v. Gallinger*, 173 Ariz. 75, 81, 839 P.2d 1120, 1126 (App.1992)). As we have noted, all that is required is that the statute give persons of average intelligence reasonable notice of the type of behavior that is prohibited. *See Steiger*, 162 Ariz. at 141, 781 P.2d at 619.

¶ 20 The expression "having reason to know" is commonly used in this jurisdiction and others as a *mens rea* for criminal liability. *See, e.g.*, A.R.S. §§ 13–1204(A)(5) (aggravated assault on a police officer), 13–1302(A) (custodial interference), 13–1305(A) (access interference), 13–1802(A)(5) (controlling stolen property), 13–3008 (possession of wire, electronic, or oral communications interception devices), 13–3307(A) (possession of gambling records), and 13–3709(B) (fraudulently obtaining cable television services); *see also United States v. Wuliger*, 981 F.2d 1497, 1504 (6th Cir.1992), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994) ("There are numerous criminal statutes providing for criminal liability where the *mens rea* is 'reason to know.'"), *and statutes cited therein.*

¶ 21 Contrary to Defendant's claim that the phrase equates with strict liability, "having reason to know" is in fact akin to criminal negligence. *See, e.g.*, Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law*, § 3.4(a) (1986) (describing the phrase "having reason to know" as similar to the terms "negligently" or "carelessly" in "indicating a requirement of fault, but not necessarily mental fault"). Thus, in addition to encompassing those defendants who knowingly deal with racketeering proceeds, A.R.S. section 13–2317 also applies to those who, under an objective standard of reasonableness, had "reason to know" that they were dealing with the proceeds of an offense.[3] *See id.* ("having reason to know" establishes an objective standard of guilt and Defendant is guilty if a reasonable person would have known the relevant fact).

---

3. We are aware that the federal money laundering statute requires proof that the defendant actually knew he was dealing with the proceeds of unlawful activity, and that Congress expressly rejected an earlier version of the statute which included a "reason to know" *mens rea*. *See* 18 U.S.C. § 1956; *United States v. Antzoulatos*, 962 F.2d 720, 725 n. 3 (7th Cir.1992), *cert. denied*, 506 U.S. 919, 113 S.Ct. 331, 121 L.Ed.2d 250 (1992). Similarly, in 1988, Congress eliminated an analogous "reason to know" provision from the Foreign Corrupt Practices Act, which prohibits the payment of bribes by United States companies to foreign entities. *See* 15 U.S.C. §§ 78dd–1 to –2; *see also* Steven R. Salbu, *Bribery in the Global Market: A Critical Analysis of the Foreign Corrupt Practices Act*, 54 Wash. & Lee L.Rev. 229, 241, 244 (1997). Whether these federal statutes present a more feasible approach to the prosecution of bribery and money laundering crimes is a question of public policy. The fact that the federal legislation is more circumscribed, however, has no bearing on the constitutionality of Arizona's money laundering statute.

¶ 22   The *mens rea* of "having reason to know" is also similar to the *mens rea* of criminal negligence in that it requires the jury to assess the reasonableness of Defendant's conduct.  *See* A.R.S. § 13–105(6)(d). Such after the fact determinations of reasonableness by a jury are commonplace.  Indeed, as this court has observed, "ex post facto assessments of the reasonableness of conduct and state of mind are ubiquitous and probably indispensable in the law."  *State v. Buhman,* 181 Ariz. 52, 54, 887 P.2d 582, 584 (App.1994).

¶ 23   "The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct."  *United States v. Ragen,* 314 U.S. 513, 523, 62 S.Ct. 374, 86 L.Ed. 383 (1942).  We therefore reject Defendant's claim that the "having reason to know" language of the money laundering statute is unconstitutionally vague.  Because Defendant raises no other issues on appeal, we affirm Defendant's conviction and sentence.

NOEL FIDEL, Presiding Judge, and JEFFERSON L. LANKFORD, Judge, concur.