NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

WALTER HAROLD MITCHELL, III, *Appellant.*

No. 1 CA-CR 22-0521
FILED 1-4-2024

---

Appeal from the Superior Court in Yavapai County
No. P1300CR202100015
The Honorable Krista M. Carman, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric K. Knobloch
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Daniel J. Kiley joined.

_____

**P E R K I N S**, Judge:

¶1 Walter Harold Mitchell, III, appeals his conviction and sentences for abandonment and concealment of a dead body. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013). Mitchell owned and operated a whole-body donation company, Future Genex, in Washington. When the company dissolved in 2020, Mitchell moved to Arizona, taking some of the remaining donated body parts.

¶3 In November 2020, Mitchell scattered the remaining body parts in the Arizona desert to make a political statement. A couple weeks later, hikers near Prescott reported they found a human hand and arm in a remote area, and a few miles away, hunters found two human heads. Officers investigated the areas and found 29 body parts consisting of heads, arms, shoulders, knees, feet, and legs. They found these body parts under brush and trees, in trash piles, or buried. Some parts had metal tags and were tied together with twine. Officers found a plastic bag nearby with a label bearing the name "Future Genex."

¶4 DNA analysis of the tissue samples revealed the dispersed body parts came from a total of nine individuals. All the individuals were predeceased and had donated their body to Future Genex or one of Mitchell's affiliated organizations. Mitchell was indicted on 29 counts of abandonment or concealment of a dead body. *See* A.R.S. §§ 13-2926(A), 13-701, 13-702, 13-801.

¶5 Before trial, Mitchell stated in an affidavit that he scattered the body parts to "create an instant platform in order to warn the public and prevent a credible threat to the public safety from a nontransplant anatomical donation industry that serves a global clientele distributing many tens of thousands of nontransplant specimens annually." He asserted

his conduct fell under the Revised Uniform Anatomical Gift Act's permitted use of body parts for "education." The State moved to preclude such a defense and any evidence offered to support it, arguing it would be "irrelevant, confuse the issues, and [could] be presented solely for the purpose of jury nullification." Mitchell moved to dismiss the charges contending that the indictment was insufficient as a matter of law because of his affirmative defense. The court denied both motions.

¶6         The jurors heard testimony regarding the common usage of "education" in the body donation industry, and the purpose for which the donors thought the bodies would be used. An FBI agent testified as an expert witness that in the anatomical donation community, education is "medical education" and "refers to what you traditionally think of at a medical school but also this continuing education that surgeons go through all the time to learn new techniques." He noted the industry standard for the disposition of unused remains is cremation. Relatives of the deceased donors testified that Mitchell informed them the donated parts would be used for research and teaching surgical procedures.

¶7         Mitchell testified that he scattered the body parts in high traffic areas and expected someone to find them a couple days later. He claimed he did it intentionally to warn the public about insufficient regulation. And he conceded that he did not notify anyone about the body parts and "buried" some of the parts "out in the desert," despite his contention that he wanted them found quickly.

¶8         When discussing final jury instructions, defense counsel argued that definitions of "transplantation," "therapy," "research," and "education" from the Uniform Anatomical Gift Act were not part of Arizona law, and the instructions should explicitly state the definitions were not in Arizona law. The court denied the request finding the explanation unnecessary.

¶9         The court instructed the jury that "[t]he terms 'transplantation', 'therapy', 'research' and 'education' are not defined in the Revised Arizona Anatomical Gift Act." But that "[i]n determining the meaning of these words, [they] may consider the common meaning and the following language from the Uniform Anatomical Gift Act": "Education posits the use of the whole body or parts to teach medical professionals and others about human anatomy and its characteristics."

¶10        The jury found Mitchell guilty on all 29 counts. The court sentenced Mitchell to aggravated, concurrent sentences of 2.5 years in

prison on Counts 1–24; and aggravated, concurrent sentences of 3.75 years on Counts 25–29. These sentences run consecutively for a total sentence of 6.25 years, with 671 days of presentence incarceration credit. Mitchell timely appealed, and we have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

## DISCUSSION

**¶11**        Mitchell asserts that the term "education" in the Revised Uniform Anatomical Gift Act is unconstitutionally vague. *See State v. Western*, 168 Ariz. 169, 171 (1991) ("The due process clause of the fourteenth amendment does not permit the state to deprive a person of liberty for violating a statute whose terms are so vague, indefinite and uncertain that their meaning cannot be reasonably ascertained.") (cleaned up). Mitchell failed to raise his constitutional vagueness challenge before the trial court. "However, when, as here, a defendant claims that a statute is unconstitutionally vague, we may consider that claim for the first time on appeal." *See State v. Lefevre*, 193 Ariz. 385, 389, ¶ 15 (App. 1998).

**¶12**        We review de novo whether a statute passes constitutional muster. *State v. Arevalo*, 249 Ariz. 370, 373, ¶ 9 (2020). A statute is presumptively constitutional, and the party challenging its validity bears the burden of demonstrating otherwise. *Id.* We give the language of the statute its plain and ordinary meaning. *See State v. Luviano*, 255 Ariz. 225, 228, ¶ 10 (2023).

**¶13**        "A statute is unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit instructions for those who will apply it." *State v. McMahon*, 201 Ariz. 548, 551, ¶ 7 (App. 2002) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). "Due process does not require, however, that a statute be drafted with absolute precision. It requires only that the language of a statute convey a definite warning of the proscribed conduct." *Id.* at ¶ 8 (cleaned up). "A statute is not unconstitutionally vague solely because it fails to explicitly define one of its terms or because the provision is susceptible to more than one interpretation." *See Lefevre*, 193 Ariz. at 389, ¶ 15.

**¶14**        A person commits abandonment and concealment of a dead body by "knowingly mov[ing] a dead human body or parts of a human body with the intent to abandon or conceal the dead human body or parts." A.R.S. § 13-2926(A). "This section does not apply to the disposition, transportation or other handling of dead human remains for any purpose

authorized under . . . [the Revised Uniform Anatomical Gift Act.]" A.R.S. § 13-2926(B). Mitchell admits that he scattered the body parts near Prescott, but relies on the Revised Uniform Anatomical Gift Act's definition of "anatomical gift" to argue that his conduct is permissible: "a donation of all or part of a human body to take effect after the donor's death for the purpose of transplantation, therapy, research or *education*." A.R.S. § 36-841(3) (emphasis added). He argues that his conduct falls under the permissive use of a dead human body for "education" and that instructing the jurors to define education by its "common usage . . . failed to channel the discretion of the jurors because [the] definition of education is too broad."

**¶15**  That the legislature did not explicitly define "education" does not make the statute unconstitutionally vague. *See Lefevre*, 193 Ariz. at 390, ¶ 18. "Education" is a commonly used and understood term that a person of ordinary intelligence can discern. It is used many times in the Revised Uniform Anatomical Gift Act and is always used in concert with other terms that inform its context: "research and education"; or "transplantation, therapy, research and education." *See, e.g.*, A.R.S. §§ 36-851.02(3), -861(B). And the jury had the definition from the Uniform Anatomical Gift Act that links education to "medical education."

**¶16**  Although Mitchell contends that the court's instruction simply told the jurors to define "education" by "the 'common usage' in the applicable communities," the record shows that the instructions defined education in greater detail. Mitchell does not offer a better definition of "education," an argument why the term or provided definition is ambiguous, or an explanation why a narrower definition provides him relief. A statute is not vague simply because the jury did not agree with Mitchell's understanding of "education." That a statute "require[s] a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct." *Lefevre*, 193 Ariz. at 391, ¶ 23 (citing *United States v. Ragen*, 314 U.S. 513, 523 (1942)).

**¶17**  The plain text of Section 36-841(3) does not permit one to scatter donated body parts in the woods for "education." Mitchell had fair notice that Arizona law forbids his conduct. *See McMahon*, 201 Ariz. at 551, ¶ 7. Section 36-841 is not unconstitutionally vague.

## CONCLUSION

¶18      We affirm Mitchell's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA