943 P.2d 814

**STATE of Arizona, Appellee,**

v.

**Manuel OCHOA, Appellant.**

**No. 1 CA–CR 96–0369.**

Court of Appeals of Arizona,
Division 1, Department D.

March 4, 1997.

Review Denied Sept. 16, 1997.

---

Grant Woods, the Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Division, Colleen L. French, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Christopher Johns, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

LANKFORD, Judge.

Manuel Ochoa ("defendant") appeals his convictions and sentences for four counts of attempted murder and one count of drive-by shooting, all class 2 dangerous felonies, and one count of assisting a criminal street gang, a class 3 felony. For the reasons that follow, we affirm his convictions and sentences.

We view the evidence at trial in the light most favorable to upholding the jury verdicts. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

On the evening of January 12, 1995, the victim was celebrating his birthday in the yard outside his house in the Sunnyslope neighborhood of Phoenix. Also present were two friends who, like the victim, were members of Northside Los Cuatros Milpas ("LCM")—a street gang—as well as a third friend who was not a gang member. The victim observed a blue Monte Carlo or Grand Prix drive by. The car was driven by Frank Rodriguez. Defendant was in the passenger seat. As the victim watched, defendant fired a handgun at him and his three companions. The victim was struck by four rounds. The victim's companion was hit once in the leg.

At the scene of the shooting, the victim told police that he had been shot by "PN," a reference to the Pico Nuevo street gang. Police interviewed Rodriguez, a member of that gang. Rodriguez did not admit involvement in the shooting. However, he informed detectives that his sister had been shot by an LCM member.

The day after the shooting, police located a stolen blue Monte Carlo that had been abandoned in the Sunnyslope neighborhood. Officers found 9 mm. shell casings inside the car. After the shooting, officers found bullet fragments and 9 mm. shell casings on the street near the victim's house.

The day after the shooting, Phoenix Police Officer Vincent Bingaman stopped a Plymouth Sundance owned by Michelle Aguilera and driven by defendant. Underneath the passenger seat, where Aguilera was sitting, Officer Bingaman found a 9 mm. semiautomatic pistol. A criminalist testified that shell casings found in the abandoned Monte Carlo were ejected from the handgun found in Aguilera's car. The criminalist also testified that bullet fragments at the crime scene were fired from that same weapon.

Defendant and Rodriguez were tried together. The jury was unable to reach a verdict on any of the charges against Rodriguez, but found defendant guilty of all charges. The jury also found that Counts I through V of the indictment, alleging attempted murder and drive-by shooting, were dangerous offenses. The trial court determined that those five offenses were committed "with the intent to promote, further or assist any criminal conduct by a criminal street gang," supporting a further sentence enhancement under Ariz.Rev.Stat. Ann. ("A.R.S.") section 13–604(T) (Supp.1996). The court sentenced defendant to enhanced, presumptive terms of 13.5 years imprisonment on each of Counts I through V and to a presumptive term of 3.5 years imprisonment on Count VI, assisting a criminal street gang. The sentences were ordered to run concurrent to one another.

Defendant filed a timely notice of appeal and raises the following issues:

1. Did the trial court err in denying defendant's motion for judgment of acquittal on the charge of assisting a criminal street gang?

2. Are defendant's enhanced sentences under A.R.S. section 13–604(T) premised upon statutory provisions that are overbroad and void for vagueness?

3. Do defendant's sentence for assisting a criminal street gang and his enhanced sentences under A.R.S. section 13–604(T) amount to double punishment?

4. Did the trial court err in denying defendant's motion to suppress the 9 mm. handgun found in the search of Aguilera's car?

Defendant first argues that the trial court erred in failing to grant his motion for judgment of acquittal on Count VI of the indictment, which charged him with assisting a criminal street gang, a class 3 felony. In pertinent part, A.R.S. section 13–2308 defines that offense:

C. A person commits assisting a criminal syndicate by committing any felony offense, whether completed or preparatory, with the intent to promote or further the criminal objectives of a criminal syndicate. F. ... If committed for the benefit of, at the direction of, or in association with any criminal street gang with the intent to promote, further or assist any criminal conduct by the gang, assisting a criminal syndicate is a class 3 felony.

The indictment alleged that defendant committed the felony offenses of attempted murder and drive-by shooting to promote or further the criminal objectives of the Pico Nuevo gang.

A judgment of acquittal is warranted where there is no "substantial evidence to warrant a conviction." Rule 20, Arizona Rules of Criminal Procedure. "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)).

Under this standard, the trial court did not err in denying the motion for judgment of acquittal. The victim identified defendant as the person who fired at him and his companions. Following his arrest, Rodriguez told an investigating officer that he blamed LCM gang members for shooting his sister and attempting to firebomb a house they believed was his. This provided a possible motive for shooting the victim and his companions, who were members of LCM. Rodriguez also told police of an ongoing feud between LCM and Pico Nuevo, stating: "They do something to us, we do something to them. It started a long time ago."

The State's expert on street gangs, Officer Christopher Luebkin, identified both defendant and Rodriguez as members of Pico Nuevo. He testified that a drive-by shooting of rival gang members would further the interest of a criminal street gang by showing that the gang would not back down from confrontation and was ready to retaliate if it were wronged.

In support of his argument, defendant emphasizes the testimony of Officer Luebkin on cross-examination that he did not "know" that the shooting was gang-related and that he was unaware of any specific evidence that it was committed to benefit or advance any goal of a gang. The jury, however, was not obligated to credit this expert testimony. "Expert testimony is evidence to be considered together with all of the facts and circumstances of the case, but the trier of fact remains free to make an independent analysis of the facts upon which the opinions of the experts rest." *State v. Sisk*, 112 Ariz. 484, 485–86, 543 P.2d 1113, 1114–15 (1975). Nor was the jury compelled to acquit even if it credited this testimony. In this case, the jury could rationally determine beyond a reasonable doubt that defendant was a gang member, that he committed the shooting, that he had a gang-related motive for the shooting, and that the shooting would further the criminal objectives of Pico Nuevo. The judge did not err in denying the motion for judgment of acquittal and submitting Count VI to the jury.

We next address defendant's claim that enhancement of the sentences constituted error because the statutes providing for enhancement are void for overbreadth and vagueness. Defendant's sentences were enhanced under A.R.S. section 13–604(T), which states:

A person convicted of committing any felony offense with the intent to promote, further or assist any criminal conduct by a criminal street gang shall not be eligible for suspension of sentence, probation, pardon or release from confinement on any basis except as authorized by section 31–233, subsection A or B until the sentence imposed by the court has been served, the person is eligible for release pursuant to § 41–1604.07 or the sentence is commuted.

The presumptive, minimum and maximum sentence for the offense shall be increased by three years. The additional sentence imposed pursuant to this subsection is in addition to any enhanced sentence that may be applicable.

Defendant does not aim his constitutional challenge at this statute, but instead at the definitional statutes. He focuses on A.R.S. sections 13–105(7) and (8), which state:

7. "Criminal street gang" means an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any felony act and who has at least one individual who is a criminal street gang member.

8. "Criminal street gang member" means an individual to whom two of the following seven criteria that indicate criminal street gang membership apply:

(a) Self-proclamation.

(b) Witness testimony or official statement.

(c) Written or electronic correspondence.

(d) Paraphernalia or photographs.

(e) Tattoos.

(f) Clothing or colors.

(g) Any other indicia of street gang membership.

■ Defendant did not raise this constitutional challenge in the trial court. Nevertheless, we have discretionary authority to consider an argument for the first time on appeal when a defendant asserts that a statute is void. *Fuenning v. Superior Ct. in and for the County of Maricopa*, 139 Ariz. 590, 594, 680 P.2d 121, 125 (1983); *State v. Junkin*, 123 Ariz. 288, 290, 599 P.2d 244, 246 (Ariz.App.1979), *cert. denied*, 444 U.S. 983, 100 S.Ct. 489, 62 L.Ed.2d 411 (1979).

As a preliminary matter, we note that, in two cases decided last year, Division Two of this court considered constitutional challenges to gang-related statutes. In *State v. McCoy*, 187 Ariz. 223, 928 P.2d 647 (1996), the court rejected an argument that provisions of A.R.S. sections 13–2301 and –2308, which defined the offense of participating in a criminal syndicate with intent to assist a criminal street gang, were vague and overbroad. In *State v. Baldenegro*, 229 Ariz. Adv. Rep. 59, 932 P.2d 275 (App. Nov. 1, 1996), the court rejected an argument that sections 13–105(7) and (8) were vague and overbroad. The *Baldenegro* court held that the defendant lacked standing to mount a vagueness challenge, but also opined that the challenged statutes did not violate his constitutional right to association because it criminalized not gang membership but the promoting or assisting of criminal conduct by the gang. *Id.* at 61.

■ Defendant's principal overbreadth challenge to A.R.S. sections 13–105(7) and (8) differs from the one presented in *Baldenegro*. In the present case, defendant asserts that "he is being punished for the criteria established by the legislature as it relates to his speech." Specifically, he argues that each of the section 13–105(8) indicia of "criminal street gang" membership describes a form of expression protected by the First Amendment.

■ A statute is constitutionally overbroad if it proscribes expression protected by the First Amendment. *State v. Weinstein*, 182 Ariz. 564, 565, 898 P.2d 513, 514 (Ariz. App.1995). Even if the conduct leading to the criminal charge is not constitutionally protected, and falls within the statute's legitimate scope, a defendant may raise an overbreadth challenge if the statute "is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court." *Id.* at 566, 898 P.2d at 515 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933, 95 S.Ct. 2561, 2569, 45 L.Ed.2d 648 (1975)). Before a statute will be invalidated as facially overbroad, however, its deterrent effect on legitimate expression must be "not only real, but substantial as well." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973). To prevail on his claim defendant must overcome the strong presumption that the challenged statute is constitutional. *New Times, Inc. v. Arizona Bd. of Regents*, 110 Ariz. 367, 370, 519 P.2d 169, 172 (1974).

Defendant is unable to meet this burden. Notably, A.R.S. section 13–105(8) contains no express limitation of expression. Rather, the provision enumerates categories of evidence, describing certain modes of expression that bear upon the issue of an individual's membership in a "criminal street gang." Using such evidence to establish a sentence enhancement does not violate the First Amendment. In *Wisconsin v. Mitchell,* 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), the Supreme Court considered a challenge to a statute that enhanced a defendant's sentence on the basis of racial animus against his victim. The Court rejected the argument that the statute was overbroad "because evidence of the defendant's prior speech or associations may be used to prove that the defendant intentionally selected his victim on account of the victim's protected status." *Id.* at 488, 113 S.Ct. at 2201. The Court stated:

> The First Amendment … does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like.

*Id.* at 489, 113 S.Ct. at 2201–02. *See also Street v. New York,* 394 U.S. 576, 594, 89 S.Ct. 1354, 1366–67, 22 L.Ed.2d 572 (1969) (assuming conviction otherwise passed muster on constitutional grounds, "nothing … would render the conviction impermissible merely because an element of the crime was proved by defendant's words rather than in some other way.").

■■■ Moreover, we agree with the State that defendant lacks standing to raise a vagueness challenge to the criteria listed in A.R.S. section 13–105(8). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974); *Baldenegro,* 229 Ariz. Adv. Rep. at 61. Defendant does not allege that he was unable to ascertain that statutory criteria—like self-proclamation, tattoos, and the possession of gang paraphernalia, which were all used to identify him as a Pico Nuevo member at trial—could

be employed as indicia of street gang membership. Instead, defendant's vagueness argument asserts the First Amendment rights of others. Merely raising this argument, however, does not automatically confer standing upon him. A vagueness challenge premised on the First Amendment rights of others must demonstrate a "real and substantial" deterrent effect upon legitimate expression. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 60–61, 96 S.Ct. 2440, 2447–48, 49 L.Ed.2d 310 (1976). Defendant has demonstrated no such effect. As we have explained in our analysis of defendant's overbreadth claim, a statute which permits the evidentiary use of expression to prove criminal liability does not offend the First Amendment.

■■■ Apart from issues of standing, we reject defendant's claim that the definitions of A.R.S. section 13–105(8) are void for vagueness. Vague statutes offend the Due Process Clause of the Fourteenth Amendment. *See State v. Western,* 168 Ariz. 169, 171, 812 P.2d 987, 989 (1991). When a provision, like the one at issue, does not implicate First Amendment rights, it is not void as long as it gives persons of ordinary intelligence reasonable opportunity to know what is prohibited and provides explicit standards for those who apply it. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

■■■ The criteria described in A.R.S. section 13–105(8)(a–f) satisfy this standard. Each of the indicia is described specifically in concrete terms that can readily be understood. Defendant does not contend otherwise. In passing, defendant observes that A.R.S. section 13–105(8)(g)—"[a]ny other indicia of street gang membership"—is "so broad as to be almost ludicrous." We disagree. This "catchall" provision is not void for vagueness because it is narrowed by the statutory definition of "criminal street gang"—i.e., an "an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any felony act." A.R.S. § 13–105(7). That definition is suffi-

ciently explicit to channel the discretion of judges who must apply A.R.S. section 13–105(8)(g) to determine whether to admit or consider evidence offered on the issue of gang membership.*

 Finally, we find no merit in defendant's assertion that the statute is unconstitutionally vague because "[i]n theory, a criminal street gang member could be almost anyone. For example, 'self-proclamation' and 'clothing or colors' could encompass a girl or boy scout troop." This contention overlooks the statutory requirement that the self-proclamation or clothing worn must indicate street gang membership, thus requiring a nexus to an "association . . . whose members . . . engage in the commission, attempted commission, facilitation or solicitation of any felony act." A.R.S. § 13–105(7). Accord, Baldenegro, 229 Ariz. Adv. Rep. at 61.

 Defendant next argues that he was subjected to double punishment because the application of A.R.S. section 13–604(T) to enhance his sentences on Counts I through V was premised on the same conduct that supported his conviction and sentence for assisting a criminal street gang. Defendant does not raise a constitutional argument, but relies instead on A.R.S. section 13–116, which states in pertinent part:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

We find no merit to defendant's argument. The prohibition against double punishment in A.R.S. section 13–116 was not designed to cover sentence enhancement. See State v. Greene, 182 Ariz. 576, 580, 898 P.2d 954, 958 (1995); State v. Rodriguez, 126 Ariz. 104, 106–07, 612 P.2d 1067, 1069–70 (Ariz.App. 1980). Moreover, even if it did apply, the statute was not violated: Defendant's sentence for assisting a criminal street gang was ordered to run concurrently with all of his other sentences.

 Finally, we address defendant's argument that the trial court's failure to grant

his motion to suppress the weapon found by police officers in Aguilera's car was reversible error. Defendant moved to suppress the 9 mm. handgun, arguing that the police lacked "reasonable suspicion" to stop the car he was driving and that they exceeded the scope of a permissible search for weapons when they found the pistol under the front seat. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985).

 In determining the propriety of an investigatory detention under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we give deference to the trial court's factual findings—including findings regarding credibility—but review *de novo* the court's ultimate legal determination. *State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 927 P.2d 776, 778 (1996). There is ample evidence in the trial court record that the stop of defendant was based on reasonable suspicion. Officer Bingaman participated in the investigation of the shooting the previous night. According to a report he prepared after the shooting, but prior to the traffic stop, witnesses at the scene of the shooting observed a Sundance slowly drive past the victim's house three times shortly before the shooting. Witnesses at the scene identified the car by license plate HHH–638, which was only one number different from the license plate HHH–738 on the Sundance defendant was driving when he was stopped. That information alone may have been sufficient to justify the stop. *See State v. Axley,* 132 Ariz. 383, 389–90, 646 P.2d 268, 274–75 (1982) (*Terry* stop supported in part by fact that vehicle matched broadcast description). However, Officer Bingaman knew even more: He knew that the victim's house had been a location of LCM gang activity. He knew of the animosity between LCM and Pico Nuevo. The day prior to the stop, before the shooting, Officer Bingaman observed four known LCM gang members in the Sundance.

---

* At trial, Officer Luebkin testified that gang graffiti or hand signs fit the criterion.

462

These facts all supported the trial court's conclusion that Officer Bingaman's stop of the Sundance was based on reasonable suspicion that the occupants may have been involved in the drive-by shooting at the victim's residence. *Cf. State v. Jones*, 114 N.M. 147, 835 P.2d 863, 866 (N.M.App.1992) ("[A]n individual's membership in a gang is a factor which may properly be considered ... in determining whether a stop and frisk is proper.").

■ Defendant also complains that the police exceeded the scope of a lawful stop of a vehicle by searching for weapons under the front seat of the car. Defendant claims that because he and Aguilera exited the car and were cooperative, the officers lacked an articulable and objectively reasonable belief of potential danger to justify a weapons search. However, Officer Bingaman testified that he considered defendant a threat if defendant were to have returned to his car before it was searched. In *State v. Romero*, we recognized that such a perception justified a protective search of a vehicle's passenger compartment, stating:

> The fact that the suspects are apparently cooperative need not lessen an officer's reasonable belief that the suspects are dangerous or undermine the appropriateness of an officer's actions.... Nor does the fact that an investigating officer may have the person "under his control" diminish the vulnerability of the officer in such situations when the individual still could bolt and retrieve any weapon(s) in the vehicle.

178 Ariz. 45, 50, 870 P.2d 1141, 1146 (App. 1994) (citation omitted). The trial court did not err in denying defendant's motion to suppress.

The trial court's sentencing minute entry for Count VI makes reference to A.R.S. section 13-604(T), even though that provision was not applied to enhance defendant's sentence on that count. Pursuant to A.R.S. section 13-4036, we modify that minute entry by deleting reference to A.R.S. section 13-

604(T). In all other respects, defendant's convictions and sentences are affirmed.

THOMPSON, P.J., and GARBARINO, J., concur.