65 P.3d 475

**STATE of Arizona, Appellee,**

v.

**Louie Ernesto MONTOYA, Appellant.**

**No. 1 CA–CR 01–0976.**

Court of Appeals of Arizona,
Division 1, Department D.

April 1, 2003.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, By Stephen R. Collins, Deputy Public Defender, Phoenix, Attorneys for Appellant.

**OPINION**

GARBARINO, Presiding Judge.

¶ 1 We hold that a defendant's sentence cannot be enhanced using elements identical with those required to obtain the defendant's conviction. Specifically, here, the defendant's sentence for participating in a criminal street gang was inappropriately enhanced on the basis that he had acted to promote or assist a criminal street gang.

¶ 2 The defendant appeals his sentence for participating in a criminal street gang, arguing that he received double punishment because his sentence was enhanced pursuant to Arizona Revised Statutes (A.R.S.) section 13–604(T) (Supp.1999) by the finding that the crime was committed with the intent to promote, further, or assist a criminal street gang. Because we vacate the sentence enhancement on that count, there is no need to remand for resentencing.

**FACTUAL AND PROCEDURAL HISTORY**

¶ 3 A grand jury indicted the defendant and four co-defendants for aggravated as-

sault, a class 4 dangerous felony, threatening or intimidating, a class 4 felony, participating in a criminal street gang, a class 2 felony, and aggravated assault, a class 6 felony. The State also alleged that the defendant had committed the crimes charged while on probation, that the defendant had two prior felonies, and that the crimes "were committed with the intent to promote, further, or assist any criminal conduct by a criminal street gang." The defendant pled not guilty and his case proceeded to a jury trial.

¶ 4 During trial, Jessica P. testified that she, her mother, and her cousin threw a Halloween/birthday party for her aunt. The victim, Jimmy, testified that he was aware that the Los Victoria Locos (LVL) was a Tempe gang and that his brother, Johnnie, had associated with a separate gang called the Brownsville Latinos during high school. Jimmy testified that he was at the party when a fight began. Following the altercation, Jimmy and Shila, his then fiancée, were preparing to leave when "at least ten" people rushed towards them. Jimmy testified that "[i]t was just a barrage of punches and kicks from everywhere" and that he kept hearing references to "Victoria." Jimmy was eventually knocked unconscious. He suffered a swollen face, back injuries, and a gash requiring approximately eleven stitches. Jimmy testified that he did not remember seeing the defendant either at the party or during the fight.

¶ 5 The son of the hostess, Raymond R., testified that he saw Jimmy on the ground being kicked by several people including the defendant. Specifically, he saw the defendant kick Jimmy more than once in the head. Raymond also testified that he heard the defendant and his friends saying, "This is Victoria. You don't mess with us."

¶ 6 Former gang detective for the City of Tempe, Officer Frank Aguilera, testified that the defendant was a documented member of the LVL Gang in Tempe, that the co-defendants were also documented members of the gang, and that he would classify the fight as a gang fight.

¶ 7 The defendant testified that at the time of the alleged offense, he was no longer a member of the LVL Gang. He stated that just as he and his brother were arriving at his aunt's party, he heard "people yelling and screaming." He testified that his aunt, in a loud voice, was requesting everyone to leave and that he and his brother got back into their vehicle and left the party.

¶ 8 The jury convicted the defendant as charged and found, for enhancement purposes, that all four counts were committed with the intent to promote gang activity. After finding two prior felony convictions, the court sentenced the defendant, without objection by defense counsel, as follows: for aggravated assault, a class 4 dangerous felony, 7.5 years in prison plus 3 years in prison pursuant to A.R.S. § 13–604(T); for threatening or intimidating, 10 years in prison plus 3 years in prison pursuant to A.R.S. § 13–604(T); for participating in a criminal street gang, 15.75 years in prison plus 3 years in prison pursuant to A.R.S. § 13–604(T); and for aggravated assault, a class 6 felony, 3.75 years in prison plus 3 years in prison pursuant to A.R.S. § 13–604(T). All sentences were to run concurrently. The defendant filed a timely notice of appeal.

## DISCUSSION

¶ 9 The defendant contends that he was punished twice for the same conduct because the court enhanced his sentence for the offense of participating in a criminal street gang under A.R.S. § 13–2308 (Supp.1994) by using the sentence enhancement available pursuant to A.R.S. § 13–604(T). He makes both a statutory argument using A.R.S. § 13–116 (1989) and a constitutional double jeopardy argument.

¶ 10 First, we note that this Court has already determined that "[t]he prohibition against double punishment in A.R.S. section 13–116 was not designed to cover sentence enhancement." *State v. Ochoa*, 189 Ariz. 454, 461, 943 P.2d 814, 821 (App.1997). Accordingly, A.R.S. § 13–116 was not violated when the court enhanced the defendant's sentence for participating in a criminal street gang.

¶ 11 We conclude, however, that the defendant was subject to double punishment in violation of the constitution when the court

enhanced his conviction under A.R.S. § 13–2308 pursuant to A.R.S. § 13–604(T). Although the defendant did not assert a double punishment objection at the trial level, the issue has not been waived. *See State v. Millanes*, 180 Ariz. 418, 421, 885 P.2d 106, 109 (App.1994) ("We perceive no judicial or public policy reason for finding a waiver when a double jeopardy claim is raised for the first time on appeal.").

¶ 12 "The Double Jeopardy Clause ... bars multiple punishments for the same offense." *State v. Siddle*, 202 Ariz. 512, 515, ¶ 8, 47 P.3d 1150, 1153 (App.2002) (quoting *State v. Powers*, 200 Ariz. 123, 125, ¶ 5, 23 P.3d 668, 670 (App.2001)). Here, the defendant was punished twice for the *identical* conduct prohibited by two distinct statutes. Both A.R.S. § 13–2308(G), under which the defendant received a class 2 felony conviction for participating in a criminal street gang, and A.R.S. § 13–604(T), under which the court applied a three-year enhancement to the original sentence for participating in a criminal street gang, penalize "the intent to promote, further or assist any criminal conduct by a criminal street gang." A.R.S. §§ 13–604(T), 13–2308(G).

¶ 13 In the instant case, the trial court was not using just one element of the crime of which the defendant was convicted to aggravate the defendant's sentence. Instead, pursuant to the jury's finding, the trial court used the crime itself to enhance the sentence. Thus, there is a discernable difference between this case and *State v. Lara*, 171 Ariz. 282, 830 P.2d 803 (1992), in which the supreme court affirmed the aggravation of a defendant's sentence for manslaughter using one element of that crime—the victim's death. *Id.* at 285, 830 P.2d at 806. Although the victim's death was an "essential and irreducible" element of the crime of manslaughter, it was but one element of the crime, not the complete offense, and the supreme court determined that it was proper to use one aspect of the crime as an aggravating factor for sentencing purposes. *Id.* at 284–85, 830 P.2d at 805–06.

¶ 14 The present case can also be distinguished from the case in which the trial court enhances a sentence for armed robbery because the defendant used a deadly weapon in the commission of the crime, thus qualifying for a finding of dangerousness. In *State v. Bly*, 127 Ariz. 370, 621 P.2d 279 (1980), the supreme court explained,

> No matter what the crime, the potential for serious bodily injury or loss of human life arises when a crime is committed with a dangerous weapon. The crime itself is more reprehensible and for that reason a crime committed with a dangerous weapon or instrument shall be punished more severely than one which is not. We think the legislature's power to define crime and prescribe punishment includes enhanced sentencing, as in A.R.S. § 13–604(G), for use of a dangerous weapon.

*Id.* at 372, 621 P.2d at 281. The *Bly* court reasoned that the legislature intended that a sentence should be more severe for conduct that went beyond the norm for that class of crimes and that created a greater potential for serious bodily injury or loss of life.

¶ 15 This reasoning became more evident after *Lara* was decided in 1992, and the legislature then amended a portion of A.R.S. § 13–702 to state that the "[i]nfliction or threatened infliction of serious physical injury" constitutes a statutory aggravating factor "*except if this circumstance is an essential element of the offense of conviction* or has been utilized to enhance the range of punishment under § 13–604." 1993 Ariz. Sess. Laws, ch. 255, § 11 (emphasis added). The legislature added identical language, as well, to a portion of A.R.S. § 13–702 that applies to the "threatened use or possession of a deadly weapon or dangerous instrument during the commission of the crime." 1993 Ariz. Sess. Laws, ch. 255, § 11. It appears that the legislature's intent was to avoid double punishment in sentencing.

¶ 16 The conduct and acts used in this case to enhance the defendant's sentence were the same acts that resulted in the original conviction. The defendant's one act of participation in a criminal street gang was twice punished under one count. We therefore vacate the sentence enhancement that has been applied to the defendant's conviction for participating in a criminal street gang, a class 2 felony.

¶ 17 Finally, we note that in Justice Feldman's special concurrence in *Lara*, he concludes that "[t]his is one of those cases in which we simply cannot undo that which has been done but can only hope that the legislature will correct our errors." *Lara*, 171 Ariz. at 285, 830 P.2d at 806. Because we believe it is our duty to correct error, we conclude that the legislature could not have intended such a result. This case, however, cannot be resolved fairly based on *Lara*.

## CONCLUSION

¶ 18 We vacate the defendant's sentence enhancement for the conviction for participating in a criminal street gang. In all other respects, we affirm the defendant's convictions and sentences.

CONCURRING: SUSAN A. EHRLICH, Judge.

THOMPSON, Judge, dissenting.

¶ 19 Squarely in the face of controlling precedent from our supreme court, the majority here ignores not merely *stare decisis*, but also a clear directive from a higher court presented in *State v. Lara*, 171 Ariz. 282, 830 P.2d 803 (1992), and, in the process, disallows legislative action that is clearly within the legislature's authority. I dissent.

¶ 20 In *Lara*, our supreme court repudiated this court's holding that, because manslaughter always involves death, the sentence for that crime could not be enhanced by the fact that the defendant caused serious physical injury. 171 Ariz. at 285, 830 P.2d at 806. In doing so, the Arizona Supreme Court rejected the court of appeals' dictum that sentence enhancement is only permissible "for conduct that exceeds the elements [of the underlying offense]." *See State v. Lara*, 170 Ariz. 203, 206, 823 P.2d 70, 73 (App.1990). The majority here explicitly rejects control-

ling supreme court precedent, something the supreme court itself declined to do in *Lara*. We obviously have no authority to do this. *See McKay v. Indus. Comm'n*, 103 Ariz. 191, 192, 438 P.2d 757, 758 (1968)(rejecting court of appeals' view that it may, "[a]s our society changes," review and depart from supreme court opinions). The supreme court wrote: "Whether prior decisions of the highest court in a state are to be disaffirmed is a question for the court which makes the decisions. Any other rule would lead to chaos in our judicial system." *McKay*, 103 Ariz. at 193, 438 P.2d at 759.

¶ 21 What the legislature has done in this instance is actually quite straightforward. It has increased the punishment for every crime involving "criminal street gangs." It has raised the punishment for the crime of "participating in a criminal street gang." While the majority objects to the mechanism for effectuating the latter, there is nothing at all beyond legislative authority in providing for an eight-year sentence for "participating in a criminal street gang" (18.75 years in this case due to·priors). "Defining crimes and fixing punishments are functions of the legislature." *State v. Miranda*, 200 Ariz. 67, 69, 22 P.3d 506, 508 (2001)(citing *State v. Marquez*, 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980)). The majority here thwarts both the supreme court and the legislature in its zeal to prevent "inequity." I see no "inequity" here in a lengthy prison sentence for gang activity by a repeat offender, and I would affirm.