NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDWARD LEWIS JACKSON, *Appellant*.

No. 1 CA-CR 13-0473
FILED 06-19-2014

Appeal from the Superior Court in Maricopa County
No.  CR2012-124003-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

Edward Lewis Jackson, Tucson
*Appellant*

### MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

**W I N T H R O P,** Judge:

¶1        Edward Lewis Jackson ("Appellant") appeals his convictions and sentences for one count of possession or use of narcotic drugs and one count of possession of drug paraphernalia.  Appellant's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that he has searched the record on appeal and found no arguable question of law that is not frivolous.  Appellant's counsel therefore requests that we review the record for fundamental error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999) (stating that this court reviews the entire record for reversible error).  Additionally, this court allowed Appellant to file a supplemental brief *in propria persona*, and he has done so, raising several issues that we address.

¶2        We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (West 2014),[1] 13-4031, and 13-4033(A).  Finding no reversible error, we affirm as modified herein.

### I.  FACTS AND PROCEDURAL HISTORY[2]

¶3        On June 19, 2012, the State charged Appellant by information with Count I, possession or use of narcotic drugs, a class four felony, in violation of A.R.S. § 13-3408(A)(1), and Count II, possession of drug paraphernalia, a class six felony, in violation of A.R.S. § 13-3415(A).

---

[1]        We cite the current Westlaw version of the applicable statutes because no revisions material to this decision have since occurred.

[2]        We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

¶4 At trial, the State presented the following evidence: Sometime after midnight on May 8, 2012, Officer Baynes of the City of Phoenix Police Department was travelling in a patrol car near Thomas Road in Phoenix when he observed Appellant riding a bicycle without a headlight or rear reflector. The officer activated his overhead lights, pulled up next to Appellant, and asked him to stop. Appellant complied.

¶5 Although the lighting in the area was good, Officer Baynes turned on a spotlight mounted on his patrol vehicle and trained it on the ground so that he could see better. The officer noticed Appellant had removed a small keychain flashlight from his pocket, and the officer advised Appellant, "[Y]ou've got to have the light out the whole time [for use as a headlight], not just when the cops get here." Appellant apologized and explained that he had only the small light, which he had not been using because it was "kind of malfunctioning."

¶6 In response to questioning by the officer, Appellant stated he had just come from a nearby liquor store, where he had gone to purchase beer. The officer asked Appellant for identification, and Appellant agreed to allow the officer to hold the small paper bag Appellant was carrying while Appellant looked for his wallet. While holding the bag, Officer Baynes felt "a long, tubular type item" in the bag, and Appellant admitted he had just purchased a "glass rose."[3] Appellant consented to a search of his person, and while he searched Appellant, Officer Baynes observed what appeared to be two small, white "rocks" of crack cocaine fall from Appellant's chest area to the ground and land approximately six or seven inches in front of Appellant. The officer handcuffed Appellant and advised him of his rights pursuant to *Miranda*.[4] Appellant initially denied dropping the crack cocaine.

¶7 After being placed in the patrol vehicle, Appellant responded to further questioning about the crack cocaine rocks by stating, "I'm not saying that they didn't come from me, I'm just saying that I

---

[3] Officer Baynes testified that a glass rose is a smoking device fashioned from a glass tube with a nylon rose that typically can be purchased from a "non-chain liquor store." After the nylon rose is removed, rolled copper Brillo is inserted into the tube as a filter so the pipe can be used to smoke crack cocaine.

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

didn't drop them." Officer Baynes found a glass rose and a two-inch piece of rolled copper Brillo inside the bag Appellant had been carrying.

¶8 Officer Baynes performed a field recognition test on the suspected crack cocaine before he impounded it. A forensic scientist assigned to the Phoenix Police Department's crime lab tested the "rocks" impounded by Officer Baynes and concluded they contained 170 milligrams of cocaine base, or "crack" cocaine, a useable amount in a useable condition.

¶9 Appellant testified that, on the night he was arrested, his girlfriend failed to meet him for dinner, and he became depressed. Consequently, shortly after midnight, he went out to purchase crack cocaine, as well as a pipe and Brillo from a nearby store that sold drug paraphernalia. As he rode his bike back to his residence to smoke the cocaine, he was stopped by a police officer. He disputed the officer's testimony that he pulled the flashlight from his pocket, claiming instead he had the flashlight in his hand when he was stopped; however, he acknowledged "it was faulty." He also acknowledged the rock cocaine fell from his person; however, he claimed to have explained to the officer that the cocaine fell from his hat, and not from his hand. He then told the jury, "I am guilty of possession of those drugs, I'm not trying to hide that fact. They properly charged me, okay?" During his testimony, Appellant volunteered he "had a judge back in 1978 give me 21 years for a crime that I committed," and he had "spent about 35 years of my life in prison." He also admitted he had a prior felony conviction in Pima County in 2005.

¶10 After the case was presented to the jury, the court recessed. When the jury announced it had reached a verdict, Appellant did not timely return to court for the reading of the verdict, despite having been previously warned by the court and through the release order he had signed that trial could proceed in his absence. The court determined Appellant had voluntarily absented himself from the proceedings, and the jury returned its verdict, finding Appellant guilty of both counts as charged. The court issued a bench warrant for Appellant's arrest, and he was apprehended on April 12, 2013.

¶11 Before sentencing, the trial court found Appellant had at least nine prior felony convictions. The court sentenced Appellant to concurrent, presumptive terms of 10 years' incarceration in the Arizona Department of Corrections for Count I and 3.75 years' incarceration for

Count II,[5] with credit for sixty-two days of presentence incarceration.[6] Appellant filed a timely notice of appeal.

## II. ANALYSIS

¶12        Appellant raises several arguments in his supplemental brief.  We address each in turn.

### I. The Initial Stop

¶13        Appellant claims Officer Baynes' decision to stop him was racially motivated.  The record, however, provides no support for his belated claim.  Moreover, Appellant's own testimony strongly supports the conclusion that the officer had a proper basis for stopping him.  In his testimony, Appellant acknowledged he knew "there's a law that says

---

[5]        The trial court's June 24, 2013 sentencing minute entry indicates the court pronounced judgment on both counts as "Non Repetitive" offenses, and that both sentences were less than the presumptive term of imprisonment.  The record, however, makes clear the court sentenced Appellant as a category three repetitive offender, *see* A.R.S. § 13-703(C), and both the length of the sentences and the transcript of the sentencing proceedings make clear that Appellant was sentenced to the presumptive term on each count.  Pursuant to A.R.S. § 13-4036, we modify the trial court's June 24, 2013 sentencing minute entry to reflect that Appellant was sentenced as a category three repetitive offender, and that Appellant was sentenced to the presumptive term of imprisonment on each count.  *See State v. Ochoa*, 189 Ariz. 454, 462, 943 P.2d 814, 822 (App. 1997).

[6]        The record reflects Appellant was arrested and booked into custody on May 8, 2012, and released that same day.  On the evening of April 12, 2013, he was again arrested pursuant to the court's bench warrant, and the next day, April 13, he was booked into custody, where he remained until he was sentenced on June 24, 2013.  Thus, Appellant was incarcerated for a total of seventy-three days before the day of sentencing, and he should be credited for eleven additional days of presentence incarceration.  When we find a miscalculation in credit, we may correct the error by modifying the sentence without remanding to the trial court.  *See State v. Stevens*, 173 Ariz. 494, 496, 844 P.2d 661, 663 (App. 1992).  Accordingly, we modify Appellant's sentence to reflect eleven additional days of presentence incarceration credit.

you've got to have some type of an indication that you're a motorist so that [motor vehicle drivers] won't hit you," and he conceded the stop was proper because he was using a "faulty" light:

> [The flashlight] was faulty. [The officer] even told me that and said, "this is the reason I'm stopping you, because this light is faulty." It was there. I saw him and I knew that you had to have a light and I had it on, but I noticed it was blinking. That's the reason that he stopped me, but I don't have no objections to that. The reason he stopped me is because the Lord said, "you stop that guy," as strange as that may sound, but that's what happened.

Given this admission, as well as numerous other admissions by Appellant indicating the stop was proper, we find no error, much less fundamental error, in the officer's decision to stop Appellant.

## II. Appellant's Testimony

¶14 Appellant next argues the trial court precluded him "from giving all the facts of said case," ostensibly because his explanation of the events was "too religious in nature." We find no error.

¶15 Before trial began, the prosecutor sought to preclude Appellant from presenting testimony that intertwined references to his religious beliefs with possible punishment and receiving "mercy from God." The trial court cautioned Appellant not to gratuitously interject "comments regarding punishment or the validity of prison or jail." Nevertheless, the trial transcript indicates the court allowed Appellant a great deal of leeway in his testimony, including allowing him to make numerous religious references, and allowed him to testify at length without questions before him. Although the court sustained a few objections to Appellant's testimony made on the bases of relevance and lack of responsiveness, the court also overruled other objections made on the basis of relevance. The court's rulings regarding Appellant's testimony are fully supported by the record, and we find no abuse of discretion in those rulings, much less fundamental error that could have in any way prejudiced Appellant.

¶16 We also note that after the close of evidence, final instructions, closing arguments, and selection of the alternate juror, Appellant sought to present "other evidence" in an effort "to show that

I'm not guilty."  Appellant did not explain what additional evidence he sought to present, however, and the trial court turned the case over to the jury for deliberation.  We find no error, much less fundamental error, in the court's implicit denial of Appellant's belated attempt to present further testimony.

### III.  Use of Priors at Sentencing

¶17        Appellant argues that some of the prior convictions found by the court "were over forty-five (45) years old."  We find no error in the court's finding and use of Appellant's prior convictions.

¶18        Before trial, the State filed an allegation of historical prior felony convictions, alleging Appellant had numerous historical priors as a result of crimes committed between 1965 and 2005.  The trial court ultimately found the State had proved nine prior felony convictions for the purpose of sentencing enhancement pursuant to A.R.S. § 13-703. Those crimes dated from October 6, 1970, when Appellant committed the crimes of aggravated battery and rape, to November 19, 2005, when Appellant committed the crime of fleeing from a law enforcement vehicle. Although not a model of clarity, the record supports the conclusion that Appellant had at least two prior felony convictions in 1965, and thus each of the nine subsequent felony convictions found by the trial court counted as a historical prior felony conviction preceding his most current offenses. *See* A.R.S. § 13-105(22)(d).  Nothing precluded the trial court from considering these prior felony convictions, despite the fact that some of them were several decades old.  We find no error, much less fundamental error, in the court's decision to consider Appellant's prior felony convictions at sentencing and to sentence Appellant as a category three repetitive offender.  *See* A.R.S. § 13-703(C).

### IV.  Proposition 200

¶19        Appellant argues he should be eligible for probation and drug treatment under Proposition 200, the voter-approved initiative codified at A.R.S. § 13-901.01, because his prior drug offenses were committed before Proposition 200 was approved by the electorate and A.R.S. § 13-901.01 came into effect.  We disagree.

¶20        Before sentencing, the trial court held a hearing on Appellant's prior felony convictions.  The prosecutor advised the trial court, and the court implicitly found, that Appellant was ineligible for

probation under Proposition 200 because (1) Appellant had previously been convicted of multiple violent felonies, and (2) he had at least two previous convictions for personal possession of a controlled substance or drug paraphernalia. *See* A.R.S. § 13-901.01(B), (H)(1). The record supports the court's implicit finding. Moreover, nothing in A.R.S. § 13-901.01 precluded the court from considering Appellant's felony convictions that occurred before Proposition 200 was approved by the electorate and enacted into law. The court's application of subsections (B) and (H)(1) of § 13-901.01 did not punish Appellant for past conduct, but merely made him ineligible for probation for his subsequent commission of drug crimes falling under the ambit of A.R.S. § 13-901.01. *See State v. Pendergraft*, 124 Ariz. 449, 450, 604 P.2d 1160, 1161 (App. 1979). We find no error, much less fundamental error, in the court's conclusion that Appellant was ineligible for probation.

### V. The Decision to Prosecute

¶21 Appellant next argues the prosecutor made an error in judgment by taking this case to trial. Prosecutors have wide discretion in determining which cases to pursue and what penalties to seek. *State v. Lavers*, 168 Ariz. 376, 398, 814 P.2d 333, 355 (1991). In this case, Appellant has not alleged, and the record provides no indication, that the prosecutor's decision was motivated by vindictiveness or any other potentially improper motive or ground. *See State v. Montano*, 204 Ariz. 413, 428, ¶¶ 78-79, 65 P.3d 61, 76 (2003); *State v. Tsosie*, 171 Ariz. 683, 685, 832 P.2d 700, 702 (App. 1992); *State v. Scott*, 17 Ariz. App. 183, 185, 496 P.2d 609, 611 (1972). Moreover, substantial evidence, including Appellant's own admissions, supported the verdict, and we see no abuse of discretion, much less fundamental error, in the prosecutor's decision to prosecute Appellant's case.

### VI. Appellant's Alleged Eligibility for Commutation of His Sentence

¶22 Appellant also asserts President Obama has recommended that all low-level drug offenders file appeals, seek commutation of their sentences, and otherwise seek further review of their cases in an effort to obtain relief. He notes that, although he has been convicted of violent offenses in the past, his most current offenses did not involve violence. Nevertheless, Appellant's sentences were within the statutory limits, and we find no fundamental, reversible error in their application. Appellant is, of course, not precluded from continuing to seek relief as the law may provide. *See, e.g.,* Ariz. R. Crim. P. 32.1; A.R.S. § 31-402.

*VII. Other Issues*

¶23      We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96. As we have recognized, the evidence presented at trial was substantial and supports the verdict, and the sentences were within the statutory limits. Appellant was represented by counsel at critical stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶24      After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

### III. CONCLUSION

¶25      Appellant's convictions and sentences are affirmed. The trial court's June 24, 2013 sentencing minute entry is modified to reflect that (1) Appellant was sentenced as a category three repetitive offender, (2) Appellant was sentenced to the presumptive term of imprisonment on each count, and (3) Appellant is credited for eleven additional days of presentence incarceration, or a total of seventy-three days.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh